## JAMES T. EAMES *vs.* SALEM & LOWELL RAILROAD COMPANY.

The "suitable" fences which a railroad corporation is required by the Gen. Sts. *c.* 63, § 43, (St. 1846, *c.* 271,) to erect and maintain on both sides of the railroad, need not of necessity be such fences as are required to be maintained by owners of adjoining improved lands, and described in the Gen. Sts. *c.* 25, § 1, as "legal and sufficient."

If the owner of sheep suffers them to be unlawfully on land from which they stray through an unsuitable fence to the track of an adjoining railroad, where they are killed by a passing train, the railroad corporation is not liable in damages, although the fence was one which it was bound to make and maintain suitably.

If the owner of sheep negligently suffers them to stray on a railroad, where they are killed by a passing train, the railroad corporation is not liable in damages.

TORT for the killing of sheep on the defendants' railroad by their locomotive engine. At the trial in the superior court, before *Reed*, J., without a jury, these facts were found:

The defendants were incorporated by the St. of 1848, *c.* 223, and built a railroad from Salem to Lowell. One Taylor owned pasture land and a dwelling-house, near but not adjoining the railroad, the intervening tract being woodland owned in several strips running parallel with the railroad by different proprietors. There was no fence between Taylor's land and the woodland; nor any fence between the strips of woodland; but between the woodland and the railroad there was a rail fence, having in some places only two, and in others three rails, and varying in height from two and a half to four feet. The lower rail was more than a foot from the ground in many places; and the fence was not sufficient against sheep.

Taylor had for many years pastured cattle on his land; and they had strayed over the woodland, without objection on the part of its owners; but no positive knowledge of this practice by such owners was shown in the case. Before the accident which gave occasion to this action, he leased the dwelling-house, with the right to pasture cattle with his herd, to the plaintiff, whose cattle, after this lease, were turned in to Taylor's herd, and used to stray with them over the woodland, also without objection by its owners, though not, so far as appeared, with their positive knowledge.

At the time in question the plaintiff turned sheep into the pasture, without examining the fence between the woodland and the railroad. The sheep crawled under the fence at a place where there were only two rails, and the lower one was between a foot and a half and two feet from the ground; and strayed upon the track of the defendants' railroad, where they were killed by the locomotive engine of a passing train.

The judge ruled "that the defendants were bound by the statutes to fence upon the whole line of their road, except at crossings or in places where the convenient use of the road would be obstructed; that the fence which they must maintain is the fence prescribed by statute for adjoining owners of land

and that no negligence of the plaintiff in turning his sheep upon the land as before stated, nor the fact, which was found by the court, that the sheep were wrongfully upon the land adjoining the railroad, would constitute a defence to this action;" and found for the plaintiff accordingly. The defendants alleged exceptions.

*D. S. Richardson,* for the defendants.

*A. A. Prescott,* for the plaintiff. 1. The defendants were bound to maintain "suitable" fences on both sides of their road, for its whole length. Gen. Sts. *c.* 63, §§ 42–44. St. 1841, *c.* 125. St. 1846, *c.* 271. St. 1855, *c.* 350. St. 1857, *c.* 213. If the fence through which these sheep strayed was unsuitable, the defendants are liable in this action. *Browne* v. *Providence, Hartford & Fishkill Railroad Co.* 12 Gray, 59. *Rogers* v. *Newburyport Railroad Co.* 1 Allen, 17. *Corwin* v. *New York & Erie Railroad Co.* 3 Kernan, 42, 47, 48. *Munch* v. *New York Central Railroad Co.* 29 Barb. 647. *Fawcett* v. *York & North Midland Railroad Co.* 16 Q. B. 618. *Bessant* v. *Great Western Railway Co.* 8 C. B. (N. S.) 368. *Sharrod* v. *London & Northwestern Railway Co.* 4 Exch. 587. *Indianapolis & Cincinnati Railroad Co.* v. *Townsend,* 10 Ind. 38. *McCall* v. *Chamberlain,* 13 Wisconsin, 637.

2. The standard of a "suitable" fence is the "legal and sufficient" fence prescribed by statute. Gen. Sts. *c.* 25, §§ 1, 25. *Ferris* v. *Van Buskirk,* 18 Barb. 400. The most important object being to provide a safeguard for travellers, it cannot be said that any fence short of that standard is such a safeguard.

CHAPMAN, J. In some of the reported cases respecting injuries done by passing trains to domestic animals that have strayed upon railroad tracks, the elementary principles of law have not been distinctly kept in view. It may be well, therefore, in this case, to recur to these principles.

By the common law, every man was bound to keep his cattle upon his own land; and, if he suffered them to escape and go upon the land of another, he was a trespasser. *Rust* v. *Low,* 6 Mass. 90. Therefore, by the common law, the plaintiff in this case would be a trespasser, if his sheep escaped from his own

inclosure and went upon the defendants' railroad.    But, though the sheep were there by trespass, this would not authorize the defendants to kill or maim or otherwise injure them wilfully or carelessly.    Even in driving off animals trespassing upon one's land, reasonable care must be used.    And if they get upon the track, where they may expose passing trains, and the people upon the trains, to great danger, the managers of the trains are still bound to use reasonable care to avoid injuring the animals, and may not carelessly run upon them.    But they are not bound to presume that such animals will be found upon the track; and if they injure or destroy the animals without negligence, they are not liable to the owner.    The loss is owing to his own fault; and he may also be liable for the trespass, and for any injury done to the train or the persons upon it.    Even when he is entitled to recover for injury done to his animals wilfully or carelessly, he may be liable for the trespass done by them; and he cannot recover without proving that his own negligence has not contributed to the injury.

In this case, it appears that the plaintiff's sheep strayed from his own land and went upon the defendants' railroad track, and were there killed by a passing train; but it does not appear that the train was carelessly managed.    This being so, the company would not be liable by the common law, even if the sheep did not escape by reason of the plaintiff's negligence; and if the plaintiff can maintain his action, it must be by force of some statute.    He relies upon the statute requiring the company to make and maintain fences on each side of their road, and alleges that this provision has not been complied with.

The jury were instructed " that the defendants were bound by the statutes to fence upon the whole line of their road, except at crossings or in places where the convenient use of the road would be obstructed; that the fence which they must maintain is the fence prescribed by statute for adjoining owners of land; and that no negligence of the plaintiff in turning his sheep upon he land, as before stated, nor the fact, which was found by tne court, that the sheep were wrongfully upon the land adjoining the railroad would constitute a defence to this action."    The

court are of opinion that this instruction was incorrect in several particulars. It was probably based on the opinions in *Browne* v. *Providence, Hartford & Fishkill Railroad Co.* 12 Gray, 55, and *Corwin* v. *New York & Erie Railroad Co.* 3 Kernan, 42, there referred to. But the case in the 12th of Gray was governed, not by the common law doctrine, but by a statute of the State of Connecticut. It was held in that case, and the supreme court of Connecticut has also held in the case there referred to, that the plaintiff could not recover under that statute, if he had been guilty of any negligence in suffering his animals to escape from his own close, even though the defendants' fences were insufficient. But the statute of New York is more comprehensive than that of Connecticut. Its language is, " Every corporation formed under this act shall erect and maintain fences on the sides of their road, of the height and strength of a division fence required by law ; with openings or gates or bars therein, and farm crossings of the road for the use of the proprietors of lands adjoining such railroad ; and also construct and maintain cattle guards at all road crossings, suitable and sufficient to prevent cattle and animals from getting on to the railroad. Until such fences and cattle guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines to cattle, horses or other animals thereon ; and after such fences and guards shall be duly made and maintained, the corporation shall not be liable for any such damages, unless negligently or wilfully done." This statute made a very great change in the law of that state. It required such fences on the sides of the railroad as were required by statute between adjoining proprietors of cultivated lands ; and made companies liable for injuries done by trains to animals upon the track, though they had escaped from the owner's close through his negligence, and though his lands did not adjoin the railroad. but were distant from it.

The doctrine that one can recover for an injury to which his own negligence has contributed is novel. As a general rule, 't is not just that such party shall recover; and we cannot perceive that it has any tendency to prevent the owners of cattle

from negligently suffering them to stray upon the track, and thus exposing the lives of passengers. Probably the statute of New York was designed to be in some measure penal, in order to induce railroad companies to use the greater diligence in constructing and maintaining sufficient fences. But our legislation is of a different character; and the present case must depend upon the construction of our own statutes.

Our earlier railroad acts did not require companies to make or maintain fences; but they paid damages to landowners which included the expense of fencing, as in the case of highways. See Rev. Sts. *c.* 39, § 56; *Stearns* v. *Old Colony & Fall River Railroad Co.* 1 Allen, 493. This system was modified by St. 1841, *c.* 125, and entirely changed by St. 1846, *c.* 271, which is still continued in force.

By Gen. Sts. *c.* 63, § 42, where the owner of the land has not received all the damages assessed to him, or has not agreed to maintain suitable fences upon the road, the county commissioners may require the corporation to make and maintain fences suitable for the benefit and security of the landowner, and of travellers upon the road. By § 43, each corporation shall make and maintain suitable fences, with convenient bars, gates or openings therein, at such places as may reasonably be required, upon both sides of the entire length of any railroad which shall have been constructed subsequently to May 16, 1846, except at the crossings of a turnpike, highway or other way, or in places where a convenient use of the way would be thereby obstructed; and shall also construct and maintain sufficient barriers at such places as may be necessary, and, when it is practicable to do so, to prevent the entrance of cattle upon the road.

The kind of fences required to be made by adjoining owners of land is designated in Gen. Sts. *c.* 25, § 1. But, in the ailroad act above cited, " suitable fences " are required, with, ut describing them or referring to any standard. Fences between adjoining proprietors are to be maintained only in case they improve their lands. If one allows his land to remain unimproved, or if it is a mere wood lot, he is not bound to maintain any part of the fence. But the fences to be built along the

railroad must be built upon both sides of the entire length of the road, with certain specified exceptions. They may be suitable fences, in many places, though they differ much from the fences required to be built by adjoining proprietors of improved lands; and we think the instruction that the fence which they must maintain must be the fence required by statute for adjoining owners of land was erroneous. The decision in the 3d of Kernan, above cited, was in conformity with the words of the statute of New York, which differs from ours on this point.

Nor does our statute give any right of action to the owner of animals, who negligently suffers them to escape from his own land; or of animals that are wrongfully on the land adjoining the railroad. It speaks of the benefit and security of the landowner, clearly referring to the adjoining landowner; and of travellers on the road. We cannot properly extend its construction so as to include landowners whose land does not adjoin the road. They are left to their common law rights and liabilities. If their animals are wrongfully on the adjoining land, and go upon the company's land where the fences are defective, they are trespassers. The adjoining landowner himself would not be a trespasser in case his animals escaped through a defective fence which the company is under obligation to maintain. But there are many cases in which he is bound to maintain the fence. This is the case whenever the railroad was made prior to 1846, and when he contracts to make the fence. In such case, if his animals escape, he is a trespasser.

As to other owners, therefore, the company are not guilty of negligence in suffering the fences to be defective; and the animals do not get upon the track by reason of the neglect of duty which the company owes to them. They are there by the fault of the owner.

Our legislation provides for the protection and indemnity of passengers who may be injured, and of adjoining proprietors who have a right to require the company to maintain fences, but it leaves other landowners to take all reasonable risks of their cattle being injured if they wrongfully go upon the road. It does not indemnify carelessness. The instruction was erroneous on this point. *Exceptions sustained.*