# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA,

## JULY TERM, 1870.

---

LYMAN L. LOCKE,

*vs.*

THE FIRST DIV. OF THE ST. PAUL & PACIFIC RAILROAD CO.

This action was brought to recover damages for killing plaintiff's cow. The common law, by which every man is bound to keep his cattle upon his own land, is in force in this state. *Gen. Stat. ch.* 10, *sec.* 15, *sub.* 6, prohibiting their going at large between October 15th and April 1st, is but an affirmance thereof, and in the absence of action by the town, under said subdivision, determining the time and manner in which they may go at large, it is as unlawful for them to be at large in summer as in winter, though by *Gen. Stat. ch.* 19, *title* 3, the owner of land insufficiently fenced, can recover nothing for damages done in the day time by cattle over two years old, and not breachy.

In March, 1869, the plaintiff suffered his cow to go at large. She strayed upon the defendant's track, and was killed by a passing train. *Held*, that she was there by plaintiff's fault. The company, in such case,

Locke v. First Div. St. Paul & Pacific Railroad Co.

if it found the beast upon its track was thereupon bound to exercise all reasonable and proper care to avoid injuring her. It should make the same effort to that end as a prudent person would do if he owned both train and beast, properly considering the danger to both: but the burden of proof is on plaintiff to show want of such care, on the part of those in charge of the train, after the peril of the animal was discovered. The mere fact that the cow was killed by the train, has no tendency to prove it; nor that the railroad is straight for half a mile west of the spot where the accident occurred, and that for sixty rods west of it the track and adjacent grounds, for thirty rods back on each side, were such as to afford a clear view; nor that the train passed the spot at its usual speed.

The defendant's charter required it to ring its bell, or to whistle, at a distance of eighty rods from the place where its road crossed any other road, and ring or whistle at intervals until it shall have crossed "said road or street," under fifty dollars penalty, "and to be liable for all damages by reason of neglect." *Held*, that a highway or public thoroughfare is here meant, and that said provision is not applicable to a crossing by the railroad of a way leading from certain meadows to the highway made use of by the owners of said meadows, and those claiming under them, to transport hay and wood therefrom, by license of, or contract with the owner of the land lying between such meadows and the highway; that, therefore, the omission to make such signal at said crossing, (where the accident happened) was not evidence of negligence. That if its charter had required defendant to make said signals at said crossing, its neglect to do so, would not, of itself, be evidence relatively to plaintiff, that the injury resulted from such omission, but only as to persons, or animals, lawfully on the track.

Plaintiff's violation of law, in letting his cow run at large, was not *remote* neglect, but a proximate cause of the collision.

Defendant was not required by law to fence its track, and it was not fenced. *Held*, that it is not, on that account, as against cattle unlawfully on its track, to be held to greater care than a railroad whose track is fenced.

This action was commenced before a justice of the peace in Hennepin county, and removed to the district court for that county, where a trial was had before a jury, who returned a verdict for the plaintiff for $85. The defendant made a motion for a new trial which was denied, and it

appeals from the order denying the same to this court. The case is sufficiently stated in the opinion.

H. R. BIGELOW for Appellant.

BEEBE & SHAW for Respondent.

*By the Court*—RIPLEY, CH. J.—This action was brought to recover damages for the killing plaintiff's cow.

After verdict for plaintiff, defendant moved, upon a case settled, for a new trial upon the following grounds:

*First.* Errors in law occuring at the trial and excepted to by the defendant.

*Second.* The verdict is not justified by the evidence, and is contrary to law.

*Third.* Excessive damages, appearing to have been given under the influence of passion or prejudice. (This is not urged.)

Defendant appeals to this court from the order of the district court denying the motion.

The cow was killed on the 8th of March, 1869. The plaintiff then lived at Minnetonka, about one quarter of a mile southerly of the rail road. About noon of that day, he turned the cow out to water, and she, with some other cattle, followed some men who were hauling hay across the rail road, eating the hay that got scattered along the bushes. She was seen at about 2 p. m., being then some sixty rods north of such crossing, heading north. About 3 o'clock in the afternoon of the same day she was run against and killed, at or near such crossing, by the defendant's regular passenger train from the west, running upon its usual time, and in its usual manner, and at the usual rate of speed, from eighteen to twenty miles an hour. The crossing was about one quarter of a mile west of Minnetonka station, a way

Locke v. First Div. St. Paul & Pacific Railroad Co.

station, the train not stopping there unless signaled, and not stopping on this occasion.

The usual station whistle was blown before the train reached said crossing, but the evidence was conflicting as to where it was blown, the plaintiff testifying that it was just about where the cow was killed, and one of the witnesses that it was about eighty rods west of it. No one saw the cow at the time she was struck. Immediately after the train had passed, she was found lying lengthwise of, and north of the track, her back towards it, and extending about a foot over the north rail, and having apparently been struck from behind.

Plaintiff offered evidence tending to show that the rail road is straight for half a mile west of the place where the cow was struck, and that for sixty rods west of it, the track and adjacent grounds for thirty rods back on each side, was such as to afford a clear view.

Defendant was not required by law to fence its road, and it was not fenced. Section 24, of its charter, reads as follows:

"A bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive engine, and shall be rung, or whistled at a distance of about eighty rods from the place where said road shall cross any other road, and be kept ringing or whistling, at intervals, until it shall have crossed said road or street, under penalty of fifty dollars fine, * * and to be liable for all damages by reason of neglect."

No bell was rung, or whistle blown, except said whistle for the station, one long whistle, which was all that was usually done there.

The following evidence was introduced as to the character of the crossing.

Plaintiff testified that his cow was struck "at' a crossing where people had drawn hay. The road which crossed the railroad here, has been there ever since I have been there, and the crossing has been there since the railroad was built. Planks were spiked down between and outside the rails with railroad spikes. On one side, the south, is a meadow or marsh, and the ground ascends on the north side from the track, by a gradual ascent. This crossing is on a kind of road that leads down to some meadows on the north side of the railroad, and is used mainly for hauling hay and wood; principal meadow may be one fourth of a mile from the railroad. Mr. Perkins owns the land on either side of the rail road.."

H. H. Knight, a witness for plaintiff, who saw the cow about sixty rods north of the crossing, at 2 p. m., and who was then hauling hay over it, testified that "the road * * is used for hauling hay and wood, and was there before the railroad was built. I laid the plank down myself at the crossing and somebody spiked them there afterwards. The crossing was put there shortly after the track was laid; think defendant laid its track there' two years ago last summer. There is probably from twenty to one hundred tons of hay drawn over that road some winters. This hay road is not a public laid out road, so far as I know."

John Donnelly, another witness for plaintiff, in rebuttal of defendant's case, testified: "I planked the crossing spoken of, by direction of defendant." (The inference would seem to be, that he spiked down the planks laid down by Knight.)

Thomas H. Perkins, a witness for defendant, testified: "There is a place on the railroad, a little west of Minnetonka station, that is planked over, and has the appearance of being traveled some in winter; have never seen any team

crossing there in summer; I own the land on either side of the railroad, at the crossing; there is no public or laid out road there, so far as I know." On cross-examination he said: " I don't think you can see that crossing from my house, but you can from my mill, which I was engaged in building the most of last summer; I did not see a team pass over that crossing last summer, and do not think there was one crossed there; don't know where the road leads to, except to some hay meadows over beyond the railroad."

The decisions, upon the subject of injuries to domestic animals by railways, are very numerous, and, to some extent, difficult to reconcile. We take it however, to be beyond question, that if such animals are on the track by the fault of the owner, such owner takes all reasonable risks of their being injured. The company, however, "are not, on that account, authorized to injure them wilfully, or carelessly. Even in driving off animals trespassing upon one's land, reasonable care must be used." The company are, therefore, in such case as above supposed, "bound to use reasonable care to avoid injuring them, and may not carelessly run upon them." But they "are not bound to presume that they will be upon the track." (*Eames vs. Salem & Lowell R. R.*, 98 *Mass.*, 560.)

The only question, therefore, in such case, would be, whether the company, if it find them on its track, has thereupon exercised reasonable and proper care to avoid injuring them. It should make the same effort to that end, as a prudent man would if he owned both train and cattle, properly considering the regard both to the train and cattle.

The owner of an animal, who has not kept it within his own enclosure, when he might do so by proper care, cannot require the company, to regulate the management and speed of the train with reference to such animal coming upon its

track, and the burden of proof is on him, to show, that the train was carelessly managed after the peril of the animal was discovered. 1 *Redfield on Railways*, *ch. xviii*, ¶ 126, *secs.* 1, 9, 22. *Eames vs. S. & L. R. R.*, 98 *Mass.*, 560. *Central Ohio R. R. Co. vs. Lawrence*, 13 *Ohio, N. S.* 66. *Stearns vs. O. C. & F. R. R.*, 1 *Allen*, 493.

In applying these rules, which we consider to be well settled, to the case at bar, we are first to enquire whether the cow came upon the track through the fault of the plaintiff.

He turned her out to water about noon, and she followed some men who were hauling hay across the railroad. After he so turned her out, he next saw her about 3 o'clock, p. m., dead upon the railroad. Hence it appears that he allowed the cow to run at large.

By the common law every man was bound to keep his cattle upon his own land, and if he suffered them to escape, and go upon the land of another, he was a trespasser.

The plaintiff contends that, both by custom, and statute, this rule has been reversed.

The matter has been regulated by statute from so early a period in the history of Minnesota, that argument from custom is not applicable.

By *Rev. Stat.*, *ch. xi*, which took effect September, 1851, provision is made for partition fences between enclosed lands, for the enforcing the requirement of *sec.* 2, that "the respective occupants of lands enclosed with fences, shall keep up and maintain partition fences between their own, and the next adjoining enclosures, in equal shares, so long as both parties continue to improve the same."

By *sec.* 23, each county may * * provide pounds, in which swine, sheep, horses, asses, mules, goats and neat

cattle, may be restrained and kept from going at large, contrary to law, òr any by-law of said county.

The common law being, then, the law of this territory, (*State vs. Pulle,* 12 *Minn.*, 170,) it follows, that under these laws, every man was to keep his cattle on his own land, and that the tenant of a close, was not obliged to fence, but against cattle, which were lawfully on the adjoining land. (*Rust vs. Low,* 6 *Mass.*, 91;) nor against the highway. *Lyman vs. Gepsom,* 18 *Pick.*

*Sec.* 23, appears to recognise the rule of the common law. as in force, there being at that time, no express statute restraining cattle from going at large.

By act of March 4, 1854, (*Comp. Stat.,* ch. 131,) it was enacted, that it shall and may be lawful for sheep and swine, to run at large, in and upon the open commons, on unoccupied grounds in the territory, at any, and all times, between the 1st of May, and the 1st day of November, in each, and every year : *provided,* that a majority of the legal voters, shall so determine at any regular precinct meeting ; but the act was not to extend to any incorporated town or city.

By act March 7, 1857, (*Comp. Stat.,* ch. 131,) it was made lawful for all cattle, horses and mules, except such as should be known to be breachy, and stallions over two years old, to run at large in and upon any and all commons, unenclosed, or vacant lands in the territory, between April 15, and November 15, no action to be maintained for damages committed by any animals so allowed to run at large, unless it were proved on the trial, that plaintiff's land was enclosed by a good and lawful fence.   This was amended in 1863, by extending the above exception to stallions and bulls over one year old, boars over four months old, and any animal known to be breachy.

Locke v. First Div. St. Paul & Pacific Railroad Co.

By the township organization act, (Aug. 13, 1858,) towns were authorized to determine the time and manner in which cattle, horses, mules, asses, hogs, sheep, goats or dogs, should be permitted to go at large.

The commissioners for revising the statutes omitted the provisions above quoted, allowing cattle to run at large, and prohibiting actions for damages without proof of the existence of a lawful fence, because, in their opinion, such provisions were unconstitutional. *Report of Com.*, *p.* 38.

The legislature, though not re-enacting the provisions, did not adopt the report in all respects.

By *Gen. Stat., Ch.* 10, *Sec.* 14, *Sub.* 6, towns are authorized to determine the time and manner in which cattle, horses, mules, asses and sheep are permitted to go at large; *provided,* that no cattle, horses, mules nor asses be allowed to go at large between the 15th of October and April 1.

By *Chap.* 19, *Title* 3, the owner, or occupant of land, may either distrain on the land, all beasts doing damage thereon from 8 o'clock p. m., until sunrise, or have an action for the damages without regard to the sufficiency of the fences; but no recovery can be had by the owner of any lands for damages done in the day time, unless it be proved that the lands were enclosed by a lawful fence, which is declared to be such as would be sufficient against cattle, horses, asses or mules two or more years old that are not breachy.

The laws allowing any cattle to run at large, being expressly repealed, [*Gen. Stat. ch.* 122,] it is obvious that the common law, in the absence of action by the town, is in force from April to October 15, and that the statute prohibiting the allowing them to go at large from October to April, is but in affirmance of the common law. It follows, that if the town does not otherwise order, it is as unlawful for cattle to run at large in summer, as it is in winter, although

Locke v. First Div. St. Paul & Pacific Railroad Co.

the owner of land not legally fenced, can recover nothing for damages done in the day time by cattle over two years old and not breachy, and this though it be in ·winter, when all running at large is expressly prohibited by statute.

There is here an apparent inconsistency, which the fact that it is the owner alone, not the occupant of land insufficiently fenced, who cannot recover, does not diminish.

In the case at bar, the plaintiff had allowed his cow to go at large at a season of the.year, when both common law and statute forbade him to do so. In consequence of this, his willful neglect of duty, she went upon the track, she was there by his fault.

The plaintiff, however, contends that "in the passage of the statute concerning animals running at large, the legislature looked to agricultural interests, rather than the protection of rail road property, and therefore, on the score of public policy, the railroad may be liable for cattle killed, when the road is not fenced, though the cattle be trespassers."

Assuming that the law, in prohibiting cattle from running at large, had especial regard to agricultural interests, it is still impossible to perceive upon what ground of public policy, a road, exempt by law from fencing its track, is to be held liable for killing cattle wrongfully thereon.

The Indiana decisions, cited by plaintiff in support of his position, are based upon a wholly different. state of things from those before us. The Indiana statute was to the effect, that where cattle were killed upon a road not securely fenced in, and the fence properly maintained by the railroad company, judgment should be given for their value, without regard to the question whether the injury was the result of accident, negligence, or willful misconduct. The law being also that the county commissioners might determine what animals should go at large, it was held in the .case from

which plaintiff quotes, that if they had made no regulations, the most that could be said was, that the cattle were trespassers; and that it was clear from the context of the law first above mentioned, that the legislature was looking rather to agricultural interests, than to protection of railroad property.

It was with reference to that law, that the court held that the railway might be liable on the score of public policy, if its road were not fenced, though the cattle were trespassers. It is held to have been enacted for the benefit of the public, to guard against injury to passengers, rather than for owners of animals, and that the owner may be a passive wrong-doer in suffering his animal to run at large, and yet recover; because the law does not award payment to him by reason of his abstract right thereto, when he is thus a wrong-doer, but because it is supposed to be the most effectual way to compel the exercise by the company, of all reasonable care to insure the safety of passengers. *New Albany &c. R. R. vs. Malden,* 12 *Ind.* 10. However sound an exposition this may be of the laws of Indiana, it is obviously inapplicable to the law and facts of the case at bar.

The cow being on the track by plaintiff's fault, the burden of proof is on him, to show that she was killed by reason of the careless management of the train, after those in charge of it had discovered her peril; that is, that they omitted, thereupon, to do something to avoid striking her, which they might prudently have done with reference to the safety of the train, as well as of the cow, and which, if done, would have been effectual to prevent the collision; for if it was not practicable, by any prudent effort, to avoid striking her, there would be no carelessness in omitting it. *Central Ohio R. Co. vs. Lawrence,* 13 *Ohio N. S.* 66; *Louisville vs. Frankfort R. Co.* 2 *Met.* (*Ky.*) 177.

Locke v. First Div. St. Paul & Pacific Railroad Co.

Thus considered, it seems to us, not only that the verdict is not justified by the evidence, but, that on the case made by the plaintiff, he should have been non-suited.

That the train killed the cow, had, in this case, no tendency to prove any carelessness in its management with reference to her.  1 *Redfield on Railways, Ch.* 18, § 126.  *Sec.* 1.

The jury, however, might take it to be proved, that for half a mile west of the place where the cow was struck, the track was straight, and the adjacent ground on each side for thirty rods back, was such for sixty rods west of it, as to afford a clear view.  [That the track was straight for more than sixty rods, is immaterial, no evidence being offered to show that one could see down the track to the crossing, or any point short of it, from further back than sixty rods.]

The plaintiff, however, insists that the fact that such clear view could be had for said sixty rods, is competent and relevant to prove want of due care in defendant.

It might be, *provided*, 1st, that it were practicable by any prudent management, to avoid striking the cow, if her peril were discovered at that distance.   This cannot be assumed; for the presumption being, that due care was used, if the cow was, nevertheless, struck, the inference is, that the collision was unavoidable; in other words, accidental.

How, then, does the plaintiff prove, as he is bound to do, that it was practicable?   It appears to us, that he offered no evidence that had any tendency to prove this.

We have stated, that the train was running at its usual speed, from eighteen to twenty miles an hour, but this appears from defendant's testimony.   The plaintiff only proved that the train passed the crossing at its usual hour, without slacking its speed.   This certainly has no more tendency to show how the injury could have been avoided, or that it could have been avoided, than the fact, that it was

then running at its usual speed, would have had. The jury are left to conjecture. And where the evidence, as to the existence of a material fact, can only raise a bare conjecture, the case should not be submitted to the jury. *Mathies vs. Matthies*, 2 *Jones* (*Law*) *N. C.* 132..

Let it be admitted, however, that it was practicable, to avoid the injury under the circumstances supposed, it is a further prerequisite to the competency of the evidence, that it was, as plaintiff asserts that it was, the engineer's duty, relatively to him, to look ahead, to see whether the cow was on, or near the track.

We have seen, however, that he was not bound to presume that she would be. He had a right to presume that plaintiff would keep her at home, where alone she belonged, (13 *Ohio*, *N. S.* 66,) consequently, he owed no duty to plaintiff, to look ahead, to see where his cow was. His duty to his passengers might, indeed, have required him to be watchful against damage to them, of whatever kind; but with that obligation and its extent, whatever it might be, the plaintiff is not concerned. Defendant is not responsible to him for any neglect in that matter. 5 *Denio*, 266.

The evidence would seem, therefore, to have been immaterial and irrelevant.

Let the further admission be made, however, that the law is as plaintiff asserts it to be, that it was the engineer's duty, relatively to plaintiff, to look out for the cow as aforesaid, the presumption then is, that he did look, and saw whatever was to be seen. Viewed in this light, the evidence is competent and relevant to prove, not as plaintiff insists, that the engineer must have seen the cow at sixty rods off, and during all the time he was passing over that distance, either on the track or coming towards it, and almost immediately upon it, but that he so saw her, *if* she was there. It is also

a legitimate inference, from known general facts, that she must have been during such time within thirty rods of the track.

It is obvious, however, that the evidence has no further tendency to prove where the cow was, or what she was doing. It is as likely in point of fact, that she did not start towards the track, till the train was so near that collision was inevitable, as that she was where plaintiff suggests that she was, while the train was passing over the said sixty rods.

It is material to plaintiff's case, that his theory aforesaid, as to the whereabouts of the cow, should be either admitted, or proved. It is not admitted, and we do not perceive that plaintiff offers any evidence, tending to prove it.

The direct testimony, as to the killing, comes from the defence, and has no tendency to prove negligence. The plaintiff did not see the cow till she had been dragged off the track. Nothing bearing upon this point appears in his evidence, beyond the fact, that she had been struck from behind.

This is competent evidence, to show: *First*, that when struck, she was, in whole or in part, upon the track: *Second*, that her hinder parts, were then towards the engine; but this obviously has no tendency to prove how long she had been there, or in that position, or when, or from what point, within the thirty rods on either side of the track, she started for it. As to *this* material point in his case, therefore, he offered nothing but conjecture.

The plaintiff, however, further contends, that the railroad crossed another road, within the meaning of its charter, without ringing, or whistling, as therein provided; that the jury were authorized to infer, that if this had been done, it would probably have had the effect to prevent the injury;

that this, therefore, was the result of defendant's negligence, for which it was liable to plaintiff.

Admitting the premises, the conclusion does not follow; for the cow was on the track through plaintiff's fault, and in such case, notwithstanding the defendant's neglect of statutory duty on its part, the question would still be, whether *after discovering* her peril, the defendant could have avoided striking the animal. 1 *Redfield on Railways*, *ch. xviii*, § 126, *part* 9.

The supposed statutory duty, would be one which the company owed to those only, who were lawfully using the road, which plaintiff was not.

We do not think, however, that on the plaintiff's evidence, (certainly not on all the evidence; but it is with his only that we are now dealing,) the charter required defendant to ring, or whistle at this crossing. It was, therefore, immaterial whether it did or not.

It was on what plaintiff describes as a "kind of road that leads down to some meadows, on the north side of the road, and used mainly for hauling hay and wood; the principal meadow may be a quarter of a mile from the road," and that the road on either side of the railroad at the crossing was owned by Perkins.

Knight says: the road is used for hauling hay and wood, and that "there is probably from 20 to 100 tons of hay drawn over that road some winters. This hay road is not a public laid out road, so far as I know."

We are to presume that the hay and wood, were lawfully hauled over it, through Perkins' land, from the meadows to which it led; but the evidence, at most, tends only to establish the existence of a right of way over Perkins' land, for such purposes, in favor of the owner of the meadows, and those claiming under him. Manifestly it would have no

tendency to establish the existence of a highway, or public thoroughfare there, which in our opinion, is what is meant by the charter.

Such is the sense in which the word "road" is ordinarily understood; and the way in which "street" is here used in connection with it, leaves no room for doubt, that the legislature used it in that sense. The plaintiff himself, by calling it "*a kind of road,*" shows that he perfectly understood the difference between it, and a road, properly so called, and knew that it was not one.

Plaintiff urges that defendant has recognized it as a road. He showed, indeed, in rebuttal of defendant's evidence, that it spiked down the planks Knight placed at the crossing; but such an act, which might well be for its own convenience, could hardly be competent evidence of an admission that it was a road, where it was bound to make the signal, which it does not appear it had ever made there.

He further urges, that the object of the act is to prevent accidents; that such are liable to occur at any point where there is actually a road used by the public, and crossing the railroad; that, therefore, it was only necessary to show, that there was, *de facto*, a road, within the knowledge of defendant. We take it that by "a road *de facto*," is meant a road actually used by the public; but the difficulty in the plaintiff's case is, that his evidence has no tendency to show any such use of this crossing. The fact that defendant did not make the signal in question, had no tendency, therefore, to prove negligence on its part. The object of the legislature, in the requirement in question was, indeed, as he says, to prevent collision; and the presumption in law, would be, that if used, it would be effectual to that end, as to persons or animals, lawfully on the track. The omission to make the signal, would be evidence, as to them, that the injury

resulted from it; but since the law does not presume that any one will be, or allow his beast to be upon the track, contrary to law, as to them, the omission would not be such evidence.

Our views of the law, as applicable to the case made by the plaintiff, are, perhaps, sufficiently clear from what has been said, and since, in our opinion, the defendants motion for a non-suit should have been granted, it is unnecessary to discuss the evidence offered by the railroad company in defence of the action.

The only rebutting evidence, except that already stated, was in contradiction of a statement by one of defendant's witnesses, that the land on each side of said hay road was higher than the road, and does not require remark. Nor need we consider the several alleged errors in law in the instructions given, and in the refusal to give those asked by defendant.

It will be as well, however, to advert to one matter, upon which the difference between the views here taken, and those of the court below, is largely based.

The first instruction is as follows : The question of negligence, or no negligence, in this case, is a question for the jury, and if the jury believe from the evidence, that the killing of the cow of the plaintiff by the defendant's train might have been avoided by the use of reasonable care and diligence, under all the circumstances, by defendant's servants, then plaintiff should recover, and this notwithstanding the fact, that the cow was technically trespassing upon defendant, owing to the remote neglect of plaintiff, in turning her out.

Plaintiff's neglect was not *remote*, in any sense in which the word could be properly applied to it.

In actions for negligence, in the sense in which the max-

· Locke v. First Div. St. Paul & Pacific Railroad Co.

im alluded to, is used, ("*causa proxima non remota specta-tur*") one's misconduct is called "the proximate cause of those results, which a prudent foresight might have avoided. It is called the remote cause of other results."

The court below, therefore, held, though the cow would not have been killed, if the plaintiff had kept her at home, yet, that there was no want of prudent foresight on his part in letting her run at large, and that defendant was bound to exercise the same care with respect to his cow, as if she were lawfully on the track. This too, is clearly what is meant, by saying that she was only, "*technically trespassing*."

But is there no want of prudent foresight in a willful violation of law? Does its prudence, or imprudence, depend upon the likelihood, that loss may result from it? Certainly not.

If the cow were lawfully on the track, the killing is *prima facie* evidence of defendant's negligence; and the same is the practical result of holding her death to be the *remote* result of letting her out, as appears from a comparison of *this*, and the other instructions given at plaintiff's request, with the view which we have taken of the law of the case.

The fourth instruction, for instance, is as follows. The defendant is not bound to fence its road, and this fact may be taken into consideration by the jury in determining the degree of care and diligence, which ought to be exercised by the defendant in running its trains, and the question of the negligence of the defendant. A company whose road is not fenced, may reasonably be held to greater care and diligence in that regard, than one which has fenced its road.

This is taken from *Gorman vs Pacific Railway*, 26 *Mis-*

Locke v. First Div. St. Paul & Pacific Railroad Co.

*souri,* 441, where it is held that their laws as to fences, have abrogated the common law, and that cattle are not trespassers in straying upon an uninclosed railroad track; that though, as a proprietor, a railroad is under no other obligation to fence than any other, yet if it omit to, it will be held to greater care to prevent injury; that if it be asked why make the company increase its diligence for want of a fence, and not hold the owner of cattle in the vicinity of a railroad, guilty. of negligence in not enclosing them, the obvious answer is, that the obligation to increased diligence arises from the dangerous nature of the business which it pursues; that this rule would be inapplicable to a community where the law required the owner to keep his cattle up, and that the difference between the views of that court, and those of other states, arises from the difference in the owner's duty.

The instruction is based upon an erroneour theory of the laws of Minnesota, in their effect upon the owner's duty, and the consequences of his letting his cattle run at large, and it really makes the want of a fence *prima facie* proof of negligence, in so far as it holds defendant to greater care, than it would otherwise have been needful for it to exercise.

The defendant unless the statute had expressly enjoined it, would have been under no other obligation to fence its road, than any other land owner. The nature of the business carried on, has nothing to do with the degree of care to be exercised in carrying it on, as against one who is unlawfully on the premises on which it is carried on.

Judgment reversed and new trial granted.