### [No. 1582.]

## THE DENVER & RIO GRANDE RAILROAD CO. v. DIVELBISS.

1. RAILROADS—KILLING STOCK—PRACTICE—QUESTION FOR JURY.

In an action against a railroad company for killing stock within or contiguous to the corporate limits of a city, where the defendant introduced in evidence an ordinance of the city prohibiting stock from running at large, and a map and other evidence tending to show that the animal was killed within the city limits, and the plaintiff introduced in evidence an ordinance designating the boundaries of the different wards and other evidence tending to show that the point where the animal was killed was without the city limits, it was a question for the jury to determine whether or not the animal was killed within the city limits, and a failure to submit that question to the jury was error.

2. RAILROADS—NEGLIGENCE—KILLING STOCK.

Where an animal on a railroad track is in such position that it could not be seen by the engineer until the train was too close to the animal to stop before striking it, and the evidence shows that it would be more dangerous to the passengers on the train to strike the animal at a reduced speed, it was not want of ordinary care for the engineer to fail to make an effort to stop or to fail to reduce the speed of the train.

*Appeal from the District Court of Pueblo County.*

Messrs. PATTISON, WALDRON & DIVINE, for appellant.

Mr. G. C. WELLS, for appellee.

BISSELL, P. J.

The Rio Grande Railroad Company killed a cow on its track at a point either within or contiguous to the boundary lines of the city of Pueblo. The evidence was that the cow was jersey bred by a shorthorn. Nearly all stock which railroad companies are unfortunate enough to kill, turn out to be either well-bred cattle or thoroughbred horses. The value of the animal was differently fixed at $50.00 and $65.00 and by the plaintiff at $75.00. The plaintiff's statements on the stand varied from his sworn proof filed with the company by $25.00. The jury had some difficulty in arriving at the actual value. The verdict would indicate that they took these three values and added them together and divided them by three, for they rendered the quotient as a verdict and found for the plaintiff in the sum of $63.30.

The judgment is assailed on several grounds. We might hesitate to reverse the judgment on any one of them alone, but taken together the errors raise much doubt about the justness of the verdict. On one theory should the proof satisfactorily establish the proposition, there would be grave question as to the obligation of the company. This question is as to the locus of the accident.

The engineer and the fireman were really the only parties who were in a situation to observe the killing; the observations of a boy across the river are not of great value. Just before entering the main part of the city the road crosses a bridge over the Arkansas river. The road is a tangent from the bridge westward to a point from 600 to 900 feet distant where there is a curve around which the train comes on its way from Cañon City. Until the train passes around the curve, the place where the cow was killed is invisible to the engineer. After the turn is made and the train strikes the tangent there is an unobstructed view along the line for several hundred feet. On the south side of the track there is a steep bank in which there is a draw of some depth running up from the right of way. The evidence does not show how

VOL. XIII—20

long it is.   There is some dispute as to the locus of the stock when the train turned the curve.   The engineer and fireman testified that the stock was entirely invisible and in the draw and so remained until they got about 100 or 150 feet from the animal.   The stock ran along the side of the track except the one cow which belonged to Divelbiss which attempted to cross the track and get on to the mesa above to get out of the way of the train.   The engineer seeing the cow crossing the track, did not attempt to slacken the speed of the train which was running on schedule time about forty miles an hour, struck the cow, knocked it clear of the track and apparently carried it across the bridge and dropped it on the bank of the river.   The train passed along safely and nobody was hurt.   The engineer and fireman who showed themselves familiar with the running of trains testified that as soon as the stock was discovered and the animal started across the track, it became a matter for the engineer to determine whether he would apply the air brakes and attempt to stop the train and save the cow or continue the speed to avoid danger.   According to their evidence, the only safe course was to maintain the speed at which the train was going, strike the cow, lift it from the track and throw it off the right of way.   It was their opinion that any other course would have endangered the safety of both passengers and property.   If the train had been slackened and its speed diminished the cow would probably have been drawn under the engine and thereby ditched it, and might also have ditched the train to the injury of the passengers and the destruction of the company's property.   The truth of this evidence is apparent to all who are familiar with the operation of trains.   It is well known that an animal struck while the train is going at a high rate of speed will probably be thrown into the air and off the track and very seldom interferes with the running of the cars.   The engineer testified that at the rate of speed he was going when he noticed the cow, the train could not have been stopped in less than 1,000 feet, which demonstrates that the application of the brakes and the reversal of the engine

would simply have caused the train to strike the animal at a diminished speed to the detriment and peril of the train and its passengers. Evidence was offered respecting the locus of the injury. The company contended that the point at which the cow was killed was within the limits of the city of Pueblo. To establish this fact they produced the city engineer who testified that the point of the accident was within these limits. He gave this evidence without objection and whether his evidence as originally offered was or was not admissible, it was received, and he demonstrated by the data to which he referred his full knowledge of the situation, and if his evidence was of any value, it proved that the city limits covered the place where the cow was killed. To overcome this testimony the plaintiff offered evidence to the point that it was outside of the city. Some of this evidence was entirely competent and some of it was inadmissible. Without determining this question which is not discussed as an error, we will simply state the case as the defendant made it. The defendant produced the plat of the city of South Pueblo which showed it to be a part of the present city of Pueblo. This plat was filed in the office of the county clerk and recorder and thereon was a description by metes and bounds of the limits of the corporation. The plat was prepared and filed and with its description was legitimate evidence as to the boundaries of the city. The city engineer directly testified that the plat, the metes and bounds and the data in his office with which he was entirely familiar demonstrated that block six as it is termed, was a part of South Pueblo which had ultimately been incorporated into the city of Pueblo. If this was true, the place of the accident was within the city limits. To overcome this, the plaintiff produced an ordinance of the city of Pueblo which designated the wards in the city and fixed the boundaries. According to that ordinance the point of the accident was included in no ward described. The plaintiff also produced an assessor who testified that it was his duty to determine what property was in the city, and that this block six had never been included in it,

and that the bridge had always been treated as a county bridge and kept in repair by the county. Manifestly, this evidence did not directly establish the fact that the locus was outside the city limits. There may be some sort of a presumption that when the city council attempted to divide the city into wards and fix their boundaries the whole of it is presumptively included in the description. But this presumption, whatever it may be, is not in the nature of fixed and positive testimony and does not necessarily establish the city limits. There is no other evidence respecting the boundaries than what has been substantially narrated.

We now come to the errors which the appellant urges. Without following the order of his argument, we incline to the opinion the court erred in taking from the jury the determination of the question whether the locus was in reality within the limits of the city. This was an important proposition and very materially affected the liability of the railroad company. It has long been settled in this state that a railroad company is not liable for ordinary negligence or obligated to use ordinary care with reference to trespassing stock running at large within the city limits in contravention of an existing ordinance. *Denver & Rio Grande R. R. Co. v. Olsen*, 4 Colo. 239; *Denver & Rio Grande R. R. Co. v. Stewart*, 1 Colo. App. 227.

The railroad company proved an ordinance forbidding stock to run at large within the corporate limits of Pueblo. If the animal was killed within the city the company would only be liable for gross negligence. Nevertheless the court charged the jury that the killing of an animal by a railroad company is *prima facie* evidence of negligence, and that the company was liable for the value of the stock and that the burden was on the company to show due care. Under these decisions this charge would be erroneous if the jury found the locus to be within the corporate limits. We are quite willing to concede that wherever the rights of parties are determined by instruments which are the subject of construction, and not dependent on evidence *dehors* the papers, their

construction is for the court.  While it was the duty of the court to construe the plat and interpret its language, it was the duty of the jury to determine where the boundaries were, the monuments located, and whether as a matter of fact the right of way on which the accident happened was included within them.  This is the general rule with reference to the location of property.  It has been often recognized and there is no general exception to it.  *Reed v. Proprietors, etc.,* 8 Howard (U. S.), 274; *Bell v. Woodward,* 46 N. H. 332; *Naglee v. Ingersoll,* 7 Pa. St. 185.

Under the testimony admitted this was a question for the jury.  The city engineer whose competency was conceded, attempted to locate the land by the description found on the plat.  He testified without objection that block six was included by the terms of this description.  We do not determine how far his testimony was legitimate and proper nor what course the railroad company should pursue to make definite and sufficient proof of the boundaries of South Pueblo, nor how far it ought to go to establish the consolidation of South Pueblo with Pueblo.  We are relieved of this difficulty because the testimony given was received without objection, and as it stands it made a case for the jury.  The court took the question from the jury.  In this we think the learned judge erred since if the jury found with the company it was only liable for gross negligence.

We have less hesitation in holding this error because there is no evidence to show such negligence on the part of the company as would entitle the plaintiff to recover.  The evidence of the defendant's witnesses was entirely uncontradicted.  The stock was not discovered until the train got within a very short distance of the animal.  The train was coming in its ordinary way on schedule time, and the stock was on the company's right of way.  Whether stock be or be not commoners, they have no right on the railroad company's track, and when they are there they are there as trespassers in the absence of a law compelling the company to fence.  We are quite ready to concede the general rule which prevails in this state that stock

have a right to run at large, and with this limitation it is undoubtedly the duty of the company to use due care and ordinary caution and prudence to avoid killing it. Failing to use this care doubtless they are liable. What is or is not due care is dependent and determinable by the conditions. We are cited to an Alabama case which does not commend itself to our consideration. *Louisville & N. R. Co. v. Cochran*, 105 Ala. 354. This court lays down the broad proposition that the running of railroad trains at a high speed, or at such a rate as to render it impossible for the agents and managers of a train to avoid injury to animals straying on the track is negligence for which the company is responsible. We do not believe in any such doctrine, nor do we think it is consistent with the necessities of modern commerce and modern travel. Our country is one of vast extent, its commerce and its travel extend from the sea to the sea, and all trains on all roads are constantly filled with people engaged in the development of its various industries and resources. The needs and requirements of business compel the roads in recognition of public demand to run their trains at a high rate of speed and in the shortest possible time between distant points to accommodate the necessities of the public travel and the transportation of merchandise. It is of more consequence that these necessities and these demands should be met than that every trespassing animal on a right of way should be preserved and protected. We are quite of the opinion that a person owning stock who permits it to wander along the line of the road without enclosure or oversight is not entitled to the exercise of such extraordinary care on the part of the railroad company as would be demanded by the rule laid down by the Alabama case. The first duty of a railroad company is to its passengers, and secondarily to its property, and lastly to the trespassing animal. Whenever stock wanders on the track, gets in front of a moving railroad train, those in charge and control, and particularly the man at the throttle, is bound under the stress of the then situation to determine instantly what course to pursue to satisfy his

first duty, which is the protection of the people on the train, and second, the preservation of the property of the company. The course which his judgment, reasonably exercised, determines is the one which he has the right to take. If it is his judgment, and that judgment is well based, and not attacked nor overthrown by other evidence, that the lives of the passengers and the property of the company can be best protected and conserved by maintaining the speed of his train, killing the animal and throwing it from the track, and that to do otherwise would endanger his passengers and his train, he has but discharged his duty to the passengers and his duty to the company, exercised ordinary care, and the company is not responsible. We concede that if it be possible for the engineer to stop the train, lessen its speed without danger to life or property and thereby save the animal, such is his duty. The present was not such a case. Here was a train coming forty miles an hour ; when it came within 150 feet of an animal straying across the track, it was for the engineer to determine whether at the rate of speed he was running, at the distance he was from the stock, it was possible or safe for him to attempt to stop the train and save the animal. If in his judgment it could not be done, but he must maintain the speed to save the lives of the passengers and the property of his company, it was ordinary care to maintain that speed, throw the animal from the track and pursue his way. There is no want of ordinary care under those circumstances. As we read the authorities this accords with the general doctrine which the courts have expressed. *Bemis v. Conn., etc., R. R. Co.,* 42 Vt. 375 ; 1 Rorer on Railroads, p. 631 ; Shearman and Redfield on Negligence, § 494; *Parker et al. v. Dubuque & Southwestern R. R. Co.,* 34 Ia. 399 ; *Darling v. Boston & Albany R. R. Co.,* 121 Mass. 118; *Baltimore & Ohio R. R Co. v Mulligan,* 45 Md. 486 ; *Locke v. The First Division of St. Paul & Pacific R. R. Co.,* 15 Minn. 350 ; *Durham v. Wilmington & Weldon R. R. Co.,* 82 N. C. 352; *Flattes v. The C. R. I. & P. R. R. Co.,* 35 Ia. 191; *Illinois Central R. R. Co. v. Phelps,* 29 Ill. 447.

As the evidence now stands and as the case was made, there was a clear failure to prove negligence. According to the principle established by these authorities, the engineer used correct judgment and proper care and he had a right to maintain his speed to avoid danger to the lives of the passengers and protect the property of the company. The cow had no business on the right of way and the company cannot be held responsible for its destruction without some proof of the want of that care which a railroad should use with reference to stock even in cases where the stock are commoners with the right to run without enclosure and without a keeper. We do not wish to be understood as at all questioning or construing those cases which have been decided under statutes which require railroads to fence and make them liable for stock killed where the fence is insufficient. When this accident occured there was no such law in this state. The only duty which the railroad company owed to trespassing stock outside of the city limits was to use ordinary care. According to the evidence the railroad company did use that care in the present case for there is nothing to overcome the evidence of the engineer which on its face was reasonable and apparently true. What a future trial may show we are unable to anticipate; this opinion is only given in the light of the case now made and may be partially or wholly inapplicable to the evidence which may be offered on the subsequent trial.

What the evidence may show as to the locus we cannot foresee. Distinct proof may be required, more adequate, complete and perfect testimony may be demanded in order to establish it. This we cannot anticipate. If proper and competent evidence is offered it must then be, as it was in our judgment before, true, a question will be raised which the jury must pass on, and that is whether the point of the accident was within or without the city limits. We do not believe it is established either conclusively or otherwise by the production of the ordinance and the fixing of the boundaries and wards of the city. At least, the presumption thereby raised is not enough to overcome the positive testimony of

the plat and its description as explained and elucidated by the testimony of the city engineer.

We do not determine the question respecting the amount of the verdict. Evidence was given that the cow was worth $50.00 and from that upwards. The jury might take any of the values stated or any sum between and find a verdict. There was no instruction asked regarding the force and effect of the affidavit made by the plaintiff respecting the value of his cow when he filed his claim with the company. This was evidence of some importance and a matter for the jury. They may have accepted the plaintiff's explanation and believed that he put the price below the actual value for the purposes of a settlement. About this we do not speculate, nor do we believe on that account the judgment should be disturbed were this the only error. If we believed it to be an error and otherwise affirmed the judgment, we should simply reduce the recovery and affirm it as reduced. Such unimportant matters are not enough to disturb judgments entered on verdicts.

For the errors discussed, the judgment will be reversed and the case sent back for a new trial in conformity with this opinion.

*Reversed.*