JOHN D. SPINNER, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

Under the provisions of the general railroad act (§ 44, chap 140, Laws of 1850 ; § 8, chap. 282, Laws of 1854), requiring every corporation formed under it to erect and maintain fences on the sides of its road, no exception is made or permission given for openings or gates for the use of the corporation, or its customers or the public generally, but only for the use of adjoining proprietors ; and if it permits or acquiesces in the use, in its business by its customers, of a gate constructed by it at a farm crossing, so that the gate does not serve the end of a fence, it is in default.

Negligence cannot be imputed to a person simply from the fact that his beasts have escaped from his well fenced field on to a railroad track.

Plaintiff's cattle escaped from his inclosure in the night time on to the highway, and thence through a gate, at the side of defendant's road, which had been left open, upon its track, where they were struck by a passing train, some killed and others injured. The gate, for several years, had been used almost daily in the business of loading and unloading freight; vehicles delivering or taking goods passing in or out thereat. In this business defendant's servants had helped. In consequence the gate was often left open at the close of the day's business, and would be closed in the evening, or at midnight, by defendant's servants. The adjoining proprietor, for whose use the gate was originally erected, had not used it for six weeks prior to the accident, and had no knowledge of its use for his purposes on the preceding day. In an action to recover damages, *held,* that the evidence was sufficient to authorize an inference by the jury, that the gate was open by reason of its use by defendant's customers during that day, or some day shortly prior ; that defendant had sufficient notice that the gateway had been diverted from its original purpose to a common passageway for its customers, and that it was often left open in consequence thereof ; that the opening of it at all, by its assent or acquiescence, was in contravention of said statute; and that if such use of the gate was not of itself sufficient to charge defendant, it was bound to see that when the use of it for the day was over it was well closed, and for a neglect of this duty it was liable.

(Argued September 29, 1876; decided October 6, 1876.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon a verdict, and

affirming an order denying a motion for a new trial. (Reported below, 6 Hun, 600.)

This action was brought to recover damages for injuries to plaintiff's cattle.

The evidence tended to show these facts :

In September, 1872, the plaintiff was in possession of a farm of land near Ilion, in the county of Herkimer, on which he had a herd of cattle. The defendant's railroad ran along the southerly side of the farm adjoining a public highway which lay between the railroad and the farm. Between the highway and the railroad the defendant had built a fence, and in the fence, near the house of one Farrington, a gate was placed to enable him to pass to and from a part of his farm, lying on the opposite side of the railroad from his house. Defendant's depot at Ilion was some distance west of this gate, but from 1864 the gate had been used in defendant's business. Cars were run down by its employes on the track near to it almost daily, empty ones to receive freight, and loaded ones to be discharged, and wagons and carts engaged in loading and unloading, passed in and out at the gate. Defendant's employes assisted in loading and unloading and left freight there to be taken away ; they were accustomed to close the gate after business hours. In the night of the 30th of September, 1872, the plaintiff's fence was in some way broken down, and his cattle passed through it on to the highway, and the gate being open, the cattle passed through on to the track ; some of them were injured by trains passing, and others were killed.

No evidence was given showing that defendant's servant's closed the gate on the night in question.

The court instructed the jury that if the defendant's agents or servants carelessly left open the gate on the night in question, then defendant was liable for the damages sustained by the plaintiff.

The court refused to charge the jury that the defendant had sufficiently erected and maintained a fence along its road, save with the qualification that if it had carelessly omitted to

shut the gate it had not complied with the requirement of the statute.

The court refused to charge that the mere presence of these cattle on the defendant's road would bar the right of recovery.

The court refused to charge that plaintiff's cattle being upon the defendant's track without any evidence of right or authority from defendant, was conclusive evidence of negligence. To all of which rulings defendant's counsel duly excepted.

Further facts appear in the opinion.

*S. W. Jackson* for the appellant. Plaintiff was guilty of contributory negligence in allowing his cattle to trespass upon defendant's track. (*Tonawanda R. R. Co.* v. *Munger* 5 Denio, 255; 4 N. Y., 349; *Clark* v. *Syr. and U. R. R. Co.*, 11 Barb., 112; *Waldron* v. *R. and S. R. R. Co.*, 8 id., 390; *Suydam* v. *Moore*, id., 358; *Hance* v. *C. and S. R. R. Co.*, 26 N. Y., 426.) Plaintiff was bound to show, in order to recover, that his cattle got on the track by means of a defect in the fence. (*Brooks* v. *N. Y. and E. R. R. Co.*, 13 Barb., 594; *Murray* v. *N. Y. C. R. R. Co.*, 4 Keyes, 297.) The burden of proof was on plaintiff to show that his cattle were rightfully on defendant's road. (*Reynold* v. *N. Y. C. and H. R. R. Co.*, 58 N. Y., 250.)

*Amos H. Prescott* for the respondent. The bare presence of plaintiff's cattle on defendant's track would prevent a recovery. (13 N. Y., 42; 16 id., 476; 34 id., 427; 35 id., 641; 38 id., 433; 33 id., 369; 4 Keyes, 274; 2 T. & C., 388; 4 Hun, 344.) Defendant was bound to keep the gate closed so as to prevent cattle going on its track. (13 N. Y., 42; *Murray* v. *N. Y. C. R. R. Co.*, 3 Abb. Ct. App. Dec., 339; *Munch* v. *N. Y. C. R. R. Co.*, 29 Barb., 648; *McDowell* v. *N. Y. C. R. R. Co.*, 37 id., 196; *Staats* v. *H. R. R. R. Co.*, 33 How., 139.)

FOLGER, J. The plaintiff may not maintain his action, unless the statute law of the State is sufficient therefor.

Though his beasts escaped from a well fenced field, without any actual carelessness on his part, when they came upon the defendant's track they were trespassers there, and the defendant owed him no duty, save not to willfully or recklessly injure them. (*Munger* v. *Tonawanda R. R. Co.*, 4 N. Y., 349.)

The statute law has modified that rule to some extent. By it, the defendant was bound to build and keep in good repair fences along the sides of the track, where necessary to prevent cattle from getting on to it from adjoining lands, with openings, or gates or bars therein, for the use of the proprietor of the lands adjoining its track. (Gen. Railroad Acts, chap. 140, Laws of 1850, § 44, p. 233; Chap. 282, Laws of 1854, § 8, p. 611.) In this case the defendant chose, at this place, to put up a gate for the use of the proprietor. It is to be observed of this requirement of the statute, that the general and primary duty imposed, is to maintain fences along the sides of the track; and that the provision for openings, gates, or bars, is as an exception therefrom, or a permission in a given case, to wit, for the use of a proprietor of adjoining lands. No exception is made, or permission given, for gates, etc., for the use of the railroad company, or its customers, or the public generally. Against every one but a proprietor of adjoining lands a fence must be kept up, or that which will serve the purpose of one, which a gate or bars will do when kept closed. (See 16 N. Y., 430, 476.) It has been held, in the Supreme Court, that if a fence is thrown down, or blown down, or pulled down by a trespasser, the railroad company not having notice thereof, is not liable because it does not at once put it up again, and that it has a reasonable time in which to repair it. (*McDowell* v. *N. Y. Cent. R. R. Co.*, 37 Barb., 196.) And this seems to be a rational rule, and may be applied also to the case of a farm crossing-gate left open. So the inquiry here is, whether the gate in this case, had been so used, and for such length of time, and by the defendant, or with its sanction and invitation, as to warrant a finding by the jury that the defendant was negligent of the duty imposed by the statute.

Any question of negligence in the plaintiff is out of the question, as matter of fact, for the jury were charged that if they found negligence on the part of the plaintiff then he was in fault and could not recover. The verdict for the plaintiff negatived any negligence in fact in him. If the defendant is brought within the provisions of the statutes by the facts of the case, then the law will not impute negligence to the plaintiff merely from the fact that his beasts have escaped from his well-fenced field. (See *Corwin* v. *N. Y. and Erie Railway Co.*, 13 N. Y., 42, *per* MARVIN and DENIO, JJ.)

The verdict of the jury for the plaintiff, taken in connection with the charge, is tantamount to a finding that the defendant is responsible for the gate being left open on the night on which the injury was done. We think that there was evidence enough to sustain that verdict. It was in proof that for nine years before the first trial of this case, which would cover the time from the fall of 1864 to that of 1873, this gate had been used in the business of loading and unloading freight in or out of the cars of the defendant, in which, to some extent, the servants of the defendant had helped. The manner of the use of it was for the cars to be run down on the rails, near to this gate, and the vehicles leaving or taking goods would pass in or out through this gateway. · The result was that it was often left open at the end of the business day, and would be found open and be closed, sometimes at ·evening, and sometimes at midnight, by the servants of the company. The proof was uncontroverted that the plaintiff's cattle got on to the track of the defendant, through this gateway, in the night, from the gate having been left unclosed at evening. Though the evidence does not positively show that on that night it was left open by a servant, or by a customer, of the defendant, or that any goods had been received or delivered that day at cars standing near it; yet from the long continued use of it for such purpose, and from the "very considerable extent" of the business through it, and from the fact that Farrington, the adjoining proprietor,

had not used it for six weeks before that time, and had no knowledge of the use of it that day for his purposes, the jury might well infer that it was open that evening, by reason of the use of it on that day, or some day shortly prior, by the customers of the defendant. Farrington was the only one authorized to use it, by himself or by his servants, without the permission of the defendant.

The defendant had notice that this gateway, first left for the convenience of one farmer at his farm crossing, had been diverted from the prime purpose of it, to a common passage-way for its customers, because it was found to serve the daily mutual convenience of them and it. It also had notice that it was often left open in consequence thereof. It was bound to know, too, that, when opened at all, with its assent or acquiescence, it was in contravention of the statute requiring it to maintain a fence at that place, which was one of the sides of its road. If the permission to others than Farrington to open and use it, followed by actual use and opening by them, was not of itself enough to charge the defendant under the statute, it was bound to see to it, that when the use of it for the day was over, it was well closed. It might not be liable if, without its knowledge, a panel of fence was torn down, until it had a reasonable time in which to put it up again. But if, for the common purpose of itself and its customers it, from time to time, permitted that panel to be removed, and had notice from time to time that it was not restored by them when the purpose was accomplished, it would be liable for an injury to the beasts of an innocent person, straying through the gap on to its track. For the duty is to maintain its fence in good repair, which means in such state and condition that it will turn orderly cattle, or of the height and strength of a division fence required by law, and if it takes part in or permits a removal of any part of the fence, which act, from the incidents of it, results to its knowledge or notice in the fence not being kept up, it does not maintain it in that good repair. So it is with a gate at a farm crossing. It is permitted to put it there, for the convenience of the adjoining farmer, but

as a part of its fence for all others; not for its own use, nor that of its customers. When it is put to its or their use, or made subservient to its business, it is not a farm gate *pro tanto*, but as a panel in the fence taken down by it or them, and, if left open, it is as a panel left fallen down. It is bound to keep that gate also in good repair, not simply in sound material condition, but in such state as is required for a division fence, or as will turn away cattle from its track. If it permits, invites and shares in, such a use of the gateway as, to its knowledge or notice, results in the gate not serving the end of a fence, it fails in its duty. In effect, the gate is then no longer merely a gate at a farm crossing, for the use alone of an adjoining proprietor, but it has become the fence of the defendant. When it has knowledge or notice that the gate is customarily left open, or when, from the manner of the use of it, has notice that such result is likely to happen, it is in statutory default if it does not see to the closing of it, when the use of it is over for the day or other shorter period.

The verdict of the jury was warranted by the fact and the law.

These views dispose of all the exceptions taken by the defendant at the trial. The motion for a nonsuit is shown by them to have been ill founded. The learned justice at circuit was right in holding that if the defendant had not performed the duty put upon it by the statute, a right of the plaintiff to recover arose therefrom, and that the negligence of the defendant in not keeping the gate closed at night was a failure to maintain and keep in good repair a fence at the side of its track, and not a negligence in the use of its property, such as renders it liable to one injured, by its act, in person or estate, only when he is without fault of his own.

The ruling of the learned justice on the motion for a nonsuit, that contributory negligence of the plaintiff would not preclude him from a recovery in this case, if erroneous, was corrected when he charged the jury otherwise, and left it to them to find upon that question; and it was not erroneous for him to refuse a nonsuit, putting his refusal upon that ground, if there was other good reason to deny it.

It is apparent, too, from the views above expressed, that the court was not in error in refusing the three requests to charge.

The judgment should be affirmed.

All concur; ALLEN, J., taking no part; RAPALLO, J., absent.

Judgment affirmed.