Edgerton, C. J.
This is an appeal from a judgment rendered in favor of the plaintiff, and against the defendant in the District Court for Burleigh county.
The complaint alleges that certain cattle, the property of the plaintiff, casually, and without the fault of the plaintiff, strayed in and upon the railroad track, and grounds occupied by the defendant, and that the defendant by its agents and servants not regarding their duty in that respect, so carelessly and negligently ran and managed the locomotive, cars and train of the'defendant, that the same ran against and over, killed and destroyed certain of the cattle of the plaintiff, to his damage in the sum of one hundred and twenty-five dollars. The complaint further alleges that the proper appraisement was had and the proper notices given.
The defendant, in his answer, alleges that at the time mentioned in plaintiff’s complaint, the plaintiff disregarding the rights of the defendant wilfully and negligently suffered and allowed his cattle to trespass upon defendant’s right of way and road bed, and wilfully and negligently suffered and allowed his cattle to pasture and lie down on defendant’s track on the site of the injury.
That on or about July 20th, 1878, while defendant, in its usual, and ordinary course of business, was running a.train of cars.over its said road with ordinary care and prudence in the night time, unavoidably ran against some cattle which were lying and standing upon said track, and killed and injured some of plaintiff’s cattle.
On April 19, 1880, the cause was tried by a jury and a verdict returned in favor of the plaintiff.
The defendant at the time objected to the admission of certain evidence offered upon the trial, which objections were overruled, *171 and duly excepted to — and the defendant further excepted to certain portions of the charge of the court.
The defendent made a motion for a new trial, which was overruled, and judgment rendered in favor of the plaintiff, from which judgment the defendant brought his appeal to this court.
It is shown by -the testimony, that the plaintiff had a herd of cattle in the charge of an employe, near the road of the defendant. That the cattle usually pastured on the vacant lands near the railroad during the day, and were yarded by night; that on the night of the accident they were last seen by the person in charge of the same, near dark in the direction of the track.
Mr. Stevens, the employe in charge of the herd, a witness on the part of the plaintiff, testified as follows, upon cross examination:
“ Mr. Williams left these cattle in my charge, I should t.hink about two months before, don’t know exactly. I tended them part of the time myself, part of the time had a herder with them. There was a herder with them most of the time for the two weeks previous in the day time. They looked after themselves at night.I saw them about four or five o’clock the night before they were killed; they were about four or five hundred yards from my house; they were toward the railroad track, because the track sweeps around my house; they were not toward the nearest point, about east; toward the siding, as you might say; that is toward the railroad track; they were from a quarter to a half a mile from the track. My house is nearly a half a mile from the track; they were a little nearer; I think they were from 120 to 125 rods from the track;'I saw them just before I ate supper; I usually eat about five o’clock. When I went to supper, they were about a third of the distance to the track, coming toward the house; I thought likely they were coming to the house; I did not see them after that, that night; I was tending the cattle then; I worked in *172 the garden; I did not usually let the cattle run at large where they pleased. No sir, I did not let them go across the railroad track; not to say they never went across it; it was my custom almost invariably to turn them the other way, to drive them, to herd them the other way. I never noticed or saw any fence between my place and the railroad track, except what is termed a snow fence; I don’t think there was any fence, only a snow fence; I did not allow the cattle to go on the track; I don’t know much about the right of way; I allowed them to graze toward the railroad in that direction; I did not allow them on the track; they grazed along near the track, occasionally; I kept them in a corral nights; I did not watch them myself nights; I kept them in a corral at the house; they were never out of the corral while I had them, except this one night, when they were killed, and one night before. The reason why I did not put them into the corral that night, I went in to my supper, and expected to put them in when I came out. I went out for them after supper. Not seeing them, I got onto my pony and started after them; I did not find them; I hunted until dark, then of course I could not hunt any longer. ”
There was no other evidence in reference to the care of the cattle, or the negligence, if any, of the plaintiff.
The evidence of the defense showed that it was a dark and. stormy night; that the train was running about fifteen miles per hour, the ordinary rate of running freight cars. The engine had the usual head light, the engineer on the lookout; that the cattle were not discovered till the engine was within sixty or seventy feet of them; that one of the cattle was lying down on the track; that when the engineer saw the cattle, he blew the whistle for brakes, and reversed the engine.
There was no attempt on the part of the plaintiff to show that the employes in charge of the train were reckless or grossly neg *173 ligent in running the same, but that they did not exercise ordinary and reasonable care.
Upon this subject the court charged the jury as follows:
“ Upon the question of the cattle being upon the railroad right “ of way, and being there without right, I will take the responsi* “ bility of taking that part of it away from you. It is true that “ the cattle were trespassers, — that is, the owner of the cattle was “ liable for trespass by allowing his cattle to run at large, or upon “ the right of way; they had no business there; they were upon “ the property of this corporation, where they should not have “ been. If, however, you ñnd from the evidence that the cattle “ were there, that part of the question, and whether they were “ there rightfully or not, in other words, assuming that they were “ there without right, that does not relieve the railroad company “ from the obligation that they are under, and always under, to “ exercise reasonable care, vigilance and diligence in the running “ of their cars — in the running|of their engines. They have no “ more right to injure the cow, or the horse, or the man that is “ wrongfully upon their track, than they have the man that is “ rightfully there, or stock that is rightfully there. ” To which charge the defendant duly excepted:
The learned Judge in his charge seems to have either ignored the whole question of contributory negligence, or to have determined as a matter of law that there was nothing proven in this case tendvng to show contributory negligence on the part of the plaintiff.
While we are not prepared to adopt the rule which obtains in many of the states, that “ Though his (the ■ plaintiff’s) beasts escaped from a well fenced field, without any actual .carelessness on his part, when they came upon the defendant’s track they were trespassers there, and the defendant owed him no duty there, save not to wilfully or recklessly injure them.” (See 67 N. Y., 156.) *174 Neither are we prepared to say, that a plaintiff shall recover when guilty of negligence contributory to the injury, unless the loss occured by the reckless or wanton misconduct of the defendant or those in charge of the management of the train.
In this territory the plaintiff has‘ a license to allow his cattle to run at large upon all lands except cultivated, or meadow lands, or young timber. The common law upon this subject does not obtain here. But while Avithin certain limitations the owners have a license to allow their cattle to run at large, yet if they are in places extra hazardous, the owners are required to exercise an extra degree of care in taking care of their cattle; and if an accident occurs, Avhich could have been prevented by the use of such care as the circumstances of the case required on the part of the owners, then they cannot recover, unless the loss was occasioned by the wanton or reckless misconduct of defendant or its employes. As to Avhat may constitute contributory negligence on the part of the plaintiff in cases like this, Thompson, in his work on “ Negli gence,” says: “ The negligence of the plaintiff, in order to bar his recovery, must have been so far an efficient cause of the injury, that unless he had been negligent the injury would not have hap-, pened; or, as the rule is often expressed, although there may have been negligence, on the part of the plaintiff, yet unless he could by the exercise of ordinary care haA^e maided the consequences of the defendant’’s negligence, he is entitled to recover. * * * * Perhaps a better expression of this rule is, that although the plaintiff has negligently exposed himself or his property to an injury, yet if the defendant, after discovering the exposed situation, inflicts the injury upon him through a failure to exercise ordinary care, the plaintiff may recoA'-er damages.” * * * The same author'lays doAvn the general rule, that to disentitle the plaintiff from recovering, tAvo things must concur:
. 1st., A want of ordinary care on' his part.
*175 2d. A proximate connection between this ordinary care and the injury.
It is not for us to determine whether the plaintiff was guilty of contributory negligence or not; but whether enough appears in the evidence to submit that question to the jury.
Thompson, in the same work above cited, on page 1236, says: “ It is frequently stated, that when the facts are undisputed, or conclusively proved, the question of negligence is to be decided by the Court. A better opinion, however, would seem to be, that in order to justify the withdrawal of the case from the jury, the facts of the case should not only be undisputed, but the conclusions to be drawn from those facts, indisputable. Whether the facts be disputed or undisputed, if different minds may honestly draw different conclusions from them, the case should properly be left to the jury.”
In case of Railroad Company v. Stout, reported in 17 Wallace, 745, the court say upon -this question, “ Certain facts we may suppose to be clearly established from- which one sensible, impartial man would infer that proper care had not been used, and that negligence existed; another man equally sensible and equally impar-' tial, would infer that proper care had been used, and that there was no negligence. It is this class of cases, and those akin to it, that the law commits to the decision of a jury. Twelve men of the. average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard; the merchant; the mechanic; the farmer; the laborer. These sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given, it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser *176 and safer conclusions from admitted facts thus occurring than can •& single Judge.”
In no class of cases can this practical experience be more wisely applied than in that we are considering. We find, accordingly, although hot uniform or harmonious, that the authorities justify us in holding in the case before us, that although the facts are undisputed, it is for the jury and not for the Judge to determine whether proper care was given, or whether they establish negligence.
In Redfield, on the law of “ Railways,” it is said: “ And what is proper care will be often a question of law, where there is no controversy about the facts. But ordinarily we apprehend where there is any testimony tending to show negligence, it is a question for the jury.”
In Patterson v. Wallace, [28 Eng. L. & Eq., 48, j there was no controversy about the facts, but only a question whether certain facts proved established' negligence on the one side, or rashness-on the other. The Judge at the trial withdrew the case from the j ury, but it was held in the House of Lords to be a pure question of fact for the jury, and the judgment was reversed.
In Mangam v. Brooklyn Railroad, 88 N. Y., 455; the facts in relation to the conduct of the child injured; the manner in which it was guarded, and how it escaped from those having it in charge, were undisputed The judge at the trial, ordered a non-suit, holding that the facts established negligence in those having the custody of the child. The court of appeals of the state of New York, held that the case should have been submitted to' the jury, and set aside the nonsuit.
In Detroit and W. R. R. Co. v. Van Steinberg, (17 Mich., 99,) the cases are largely examined, and the rule laid down, that when the facts are disputed, or when they are not disputed, but different minds might honestly draw different conclusions from them, the case must be left to the jury for their determination.
*177 We are of the opinion that the court below erred in the charge given herein. The judgment is reversed, and the case remanded for new trial.
All the Justices concur.