SEABOARD AIR LINE RAILWAY COMPANY, A CORPORATION, *Plaintiff in Error*, v. S. V. COXETTER, *Defendant in Error*.

Opinion Filed November 30, 1921.

Petition for Rehearing Denied January 6, 1922.

1. The statute (Chapter 4706, Acts of 1899, amended by Chapter 5020, Acts of 1901, Sections 4586-4595, Revised General Statutes of Florida) imposing upon railroad companies and persons constructing and operating railroads in this State the duty to erect and maintain fences along the lines of such roads suitable and sufficient to prevent the intrusion of animals upon their tracks and fixing penalties and the measure of damages in cases resulting from a failure to do so is applicable, and liability under it attaches, only in cases where the injuries alleged are inflicted upon the animal or animals by the engines, cars or trains of the railroad company or persons operating the railroad, that is to say, by the operation or movement of the engines, cars or trains of such companies or persons.

2. The negligence alleged in this case is that the defendant railway company negligently and carelessly allowed and permitted a certain device called a "switch" and the appurtenances forming a part thereof which connected its main line with the side track to become in a defective and dangerous condition; that animals were allowed to and did habitually run at large in the community and did come and go at will upon said track at said point, all of which was well known to defendant, who made no obection to such use but acquiesced and consented thereto. The injury alleged is that the horse of plaintiff in attempting to cross defendant's track where said switch was located was caught and held in such defective switch by one of its feet in such manner that it was injured to an extent beyond recovery and was thereupon killed by plaintiff. *Held,* that the statute requiring railroad companies and persons owning and operating rail-

roads to fence their tracks and fixing the measure of damages and penalties in cases arising from injuries sustained as a result of their failure to do so is not applicable.

3. The rule at common law is that where animals roaming at large go upon the right-of-way or tracks of a railroad company and are injured the company is not liable unless the injuries suffered are the result of wantonness or willfulness on the part of the railroad company.

4. The common law in so far as it requires the owners of animals to keep them off the premises of another and renders them liable to the owner of such premises for damage done by such stock is not in force in Florida.

5. Animals running at large are not necessarily trespassers when they go upon the tracks of railroad companies in this State, and railroad companies owe to the owners of such animals the duty not to negligently injure them and may be liable for injuries negligently inflicted upon such animals going upon their tracks although their injuries may not be wanton or wilful. The action, however, must be grounded upon the negligence of the railroad company and the burden of proof of such negligence is upon the plaintiff.

A Writ of Error to the Circuit Court for Leon County; E. C. Love, Judge.

Reversed.

*W. J. Oven,* for Plaintiff in Error;

*W. C. Hodges* and *Fred H. Davis,* for Defendant in Error.

WEST, J.—The plaintiff S. V. Coxetter brought suit against the defendant Seaboard Air Line Railway Company for the value of a horse injured upon the railroad

track of defendant near Lloyd, an unincorporated Town in Jefferson County, Florida. The injury sustained was of such character that the horse was considered worthless and was put to death by plaintiff. Upon a trial the verdict was for plaintiff and judgment accordingly was entered in plaintiff's favor and against defendant. To review this judgment defendant took writ of error from this court.

The theory of plaintiff's case is not entirely clear. The negligence alleged consisted primarily in defendant's failure to perform its statutory duty to erect and maintain a fence along both sides of its right-of-way suitable and sufficient to prevent the intrusion of animals upon its track at the point where the alleged injury occurred.

It is also alleged that defendant did not take reasonable care and precaution to maintain its track in such condition as not to negligently and carelessly injure animals which were habitually accustomed to go upon its track at the point where the alleged injury occurred; that horses, cattle and other livestock were allowed to and did habitually run at large in said community and did come and go across said track at said point from time to time, all of which was well known to defendant; that defendant made no objection to such use of its track and took no steps to prevent animals going thereon, but acquiesced and consented to such use; that at said point a device called a "switch" connecting its main line with its side track was permitted to become in such defective and dangerous condition that plaintiff's horse in going upon said track where the switch was located was caught and held by one of its feet in such switch in such manner that it was so injured as to render it beyond recovery and therefore valueless, whereupon it was killed.

So much of the declaration as is necessary to present this theory of the case is as follows:

"It thereby became, and was the duty of said defendant at said point, to take reasonable care and precaution to keep and maintain its track, and so manage its line of railroad at said point, as not to negligently and carelessly injure such live stock and cattle which were habitually accustomed to go and stray upon said track at said point; that said defendant's said main line and said side track at and through the said Town of Lloyd was laid practically parallel to the public road running to and through said town, and was practically connected with said public road by a short stretch of uninclosed land which lay between defendant's said main line and side track and the said public road, and that horses, cattle and other live stock were allowed to, and did habitually run at large in said unincorporated Town of Lloyd, and did walk upon and cross over defendant's said line of railroad at said point from time to time, as defendant well knew; that although said defendant well knew of the fact that its track was uninclosed with the fence required by law, and that horses and cattle were thereby habitually allowed to run at large and stray upon and over its track at said point, yet said defendant made no objection to such use of its track, and took no steps to prevent said horses and cattle going thereon, and acquiesced therein; that at and in said unincorporated Town of Lloyd, in Jefferson County, Florida, and at said point of its said track therein where said defendant had not erected and did not maintain the fence along both sides of its said track required by law and at the said point where defendant knew, or ought to have known by the exercise of reasonable care and diligence, that its track was so situated at and through said town as to become attrac-

tive to horses and cattle to stray upon and cross over the same, and at said point where defendant knew that said cattle and horses habitually roamed at large and habitually strayed upon and over its said tracks without objection and with the acquiescence and consent of said defendant, and on or about the 27th day of March, A. D. 1916, aforesaid, said defendant negligently and carelessly allowed the certain device called a 'switch' which connected its said main line with said side track, and the appurtenances forming a part thereof, to become in such a defective and dangerous conditions that a certain horse, the property of plaintiff, in atempting to stray upon and across defendant's said track where said switch was located, was caught fast and held by one of its feet therein in such a manner that said horse was so badly injured and damaged by reason thereof, that it was pronounced by an experienced veterinary surgeon to be beyond recovery or repair and was thereupon ordered killed and killed because of such injuries received by it by being caught fast and held in said defective switch then and there maintained by the defendant at said point where it knew, or ought to have known by the exercise of reasonable care and diligence that horses and cattle were likely to stray upon and cross over said track and switch because of defendant's failure to erect and maintain a suitable and sufficient fence on both sides of its said track to prevent their intrusion thereon, as required by law, that said defective and dangerous condition of its said switch at said point was known to, or ought to have been known to defendant, by the exercise of reasonable care and diligence on its part; that as a proximate result of defendant's said negligence plaintiff has been damaged to the extent of the value of said horse, wherefore plaintiff sues the said defendant, and claims three hundred and fifty dollars as his damages.''

This declaration was demurred to upon various grounds, among them, that it sets up no cause of action against defendant; that it shows no violation of duty imposed upon defendant by statute; that it shows no violation of duty imposed upon defendant by common law; that it shows that the animal described was injured at a point where defendant was not required by law to fence its track; that it shows that the loss sustained by plaintiff was due to his negligence in permitting the animal to stray upon the track of defendant where it was injured in the manner stated without any negligence on the part of defendant; that said declaration is bad for duplicity and that it is vague and indefinite and does not clearly apprise defend- ant of the negligence relied upon by plaintiff for a recovery.

This demurrer was overruled and defendant filed four pleas. The first is the plea of not guilty. The second and fourth are special pleas by which defendant avers in sub- stance that because of the peculiar circumstances of public convenience and necessity the defendant railroad company is not required to fence its track at the point where the alleged injury was sustained. The defense interposed is that under the circumstances, the alleged injury having occurred at or near a station of the defendant railroad company which is a regular passing point for its trains, where a large amount of freight and passenger traffic is handled and which is also a regularly established point where its trains are stopped daily for the purpose of per- mitting passengers to secure their midday meal served from a regularly established eating house in the Town of Lloyd, as exception to the provisions of the statute exists *ex necessitate*. It is not necessary to set out in detail the averments of these pleas. Upon a hearing they were held good and the defendant had the benefits of this defense

at the trial.   The ruling upon this demurrer as to the
second and fourth pleas having been in defendant's favor
it cannot be considered here.   The third is a plea of con-
tributory negligence.   It went out on demurrer, but the
decisive questions in the case are other than the ruling on
this plea.   It is unnecessary therefore to further refer to
it.

The statute imposing upon railroad companies and per-
sons constructing and operating railroads in this State the
duty to erect and maintain fences along the lines of such
roads suitable and sufficient to prevent the intrusion of
animals upon their tracks is Chapter 4706, Acts of 1899,
amended by Chapter 5020, Acts of 1901, Laws of Florida
(Sections 4586-4595 Revised General Statutes of Florida.)
From the title of this statute and the language employed
in the statute itself it is clear that liability under it at-
taches only in cases where the injury resulting in the dam-
age claimed and alleged is inflicted by the engines, cars
or trains of the railroad company or persons operating
the railroad, that is to say, by the operation or movement
of the engines, cars or trains of such company or persons.
The title of the statute as originally enacted provides the
measure of damages ''for cattle Killed or injured by trains
or engines on railroads not fenced.''   (Chapter 4706, Acts
of 1899.)   The measure of damage and penalty for failure
to erect and maintain fences along the sides of its track are
fixed at the full cash value of animals which may be ''killed
or injured by any train, engine or cars upon the track''
of said railroad, if the claim therefor be paid within sixty
days after presentation, and double the cash value of the
animals killed or injured upon failure to pay the claim
within sixty days, and for attorneys fees.   (Section 4589
Revised General Statutes of Florida.)   The judgment
which the statute authorizes is based upon the value of

animals killed or injured "by the engine, train or cars of any company or person or persons owning or operating the said railroad." (Section 4593 Revised General Statutes of Florida.) The provision making the killing or injury of animals *prima facie* evidence of negligence is applicable only in cases where such injury or killing was occasioned by the "engines, cars or trains" of the railroad company or person operating the railroad. (Section 4596 Revised General Statutes of Florida.) Being limited in express terms in its application to cases arising from injuries resulting from the operation of the engines, cars or trains of a railroad company or persons operating a railroad, the statute cannot be extended to cases arising out of injuries resulting from other causes.

The injury which is made the basis of this action did not result from the operation of defendant's engines, cars or trains. Aside from its alleged failure to erect and maintain fences along both sides of its right-of-way suitable and sufficient to prevent the intrusion of animals upon its track, the negligence alleged is that defendant negligently and carelessly allowed and permitted a certain device called a "switch" and the appurtenances forming a part thereof which connected its main line with its side track to become in a defective and dangerous condition. The injury alleged is that the horse of plaintiff in attempting to cross defendant's track where said switch was located was caught and held in such defective switch by one of its feet in such manner that it was injured to an extent beyond recovery and was thereupon killed. This was clearly not such an injury as to bring it within the class of cases to which the statute under consideration applies. The fencing statute, therefore, has no application whatever to the case.

Having arrived at this conclusion, the question is whether the declaration by its allegations shows such failure on the part of defendant railway company to perform a duty or obligation imposed by the common law as to state a cause of action against it. It becomes necessary therefore to consider the reciprocal rights and obligations of owners of stock roaming at large which may go upon the tracks of railroad companies and there suffer injuries and those constructing and owning railroads in this State.

At common law the owners of animals were bound at their peril to keep them upon their own premises. If they did not do so and the animals went upon the premises of others the owners could be held liable for the trespass. Owners were not obliged to fence their lands against animals, but had a right to rely upon the owners of them performing their duty to keep the animals confined. This rule being applicable generally, it follows that at common law railroad companies were not bound to fence their tracks so as to prevent animals of others from entering thereon. And the rule at common law is that where animals roaming at large go upon the right-of-way or tracks of a railroad company and are injured the company is not liable unless the injuries suffered are the result of wantonness or wilfulness on the part of the railroad company. Elliott on Railroads (3 ed.) Vol. 3, §1695, p. 615; Eames v. Salem, etc. Co., 98 Mass. 560, 96 Am. Dec. 676 and note; Darling v. Boston, etc. Co., 121 Mass. 118; Robinson v. Flint & Co., 79 Mich. 323, 44 N. W. Rep. 779, 19 Am. St. Rep. 174; Mangold v. St. Louis, etc. R. Co., 116 Mo. App. 606, 92 S. W. Rep. 753; Atchison, etc. Co. v. Betts, 10 Colo. 431, 15 Pac. Rep. 821, 31 Am. & Eng. R. Cas. 563; Jeffersonville, etc. Co. v. Underhill 48 Ind. 389; Vandegrift v. Rediker, 22 N. J. L. 185, 51 Am. Dec. 262; Railroad Co. v. Skinner, 19 Pa. St. 298, 57 Am. Dec. 654; Moses v. South-

ern Pacific R. Co., 18 Ore. 385, 23 Pac. Rep. 498, 42 Am. & Eng. R. Cas. 555. In many jurisdictions in this country, however, this rule at common law has been greatly relaxed, due in a measure to the general conditions and custom permitting animals to roam at large on uninclosed premises without respect to ownership of such premises. In others it has been modified by statute. This is true in this State This court so held in the case of Savannah, etc. Ry. Co. v. Geiger, 21 Fla. 669, 58 Am. Dec. 697. Speaking through Mr. Justice Raney, after referring to numerous statutes regulating fences against animals and kindred subjects, the court said: ''Nothing is clearer than that the purpose and effect of all this legislation were not only to change the common law and require of every landholder or other person that he should fence out his neighbor's, and every one else's stock, if he desired protection against damage from them, but also to establish and protect a right in resident owners of stock for their cattle and other domestic animals to range and graze on all uninclosed lands free of charge, and without any liability for any damage resulting from their going upon or grazing on any lands whatsoever not inclosed by a lawful fence. No special interest is of much if any more moment to our State, and none elicited earlier legislative attention than stock raising.

''Cattle, hogs and sheep, if not all other kinds of live stock not known to be dangerous, have been allowed, and accustomed at all times and in all parts of our State, since at least soon after its acquisition from the Spanish crown, to run at large and graze on all lands not inclosed by a fence. This has prevailed not only throughout the rural districts but also in the towns, although it is true that lately in some of the latter to a limited extent, and possibly entirely in a few instances, it has been restrained by local ordinance. A different policy than that which has pre-

vailed would have proven ruinous to the important stock interests of different sections of the State; and the general legislation of later years has been no more favorable to such a policy than was that of the earlier period of our history and this, too, although in a few agricultural dis· tricts a· financial deterioration has caused most of the fences which once protected large and valuable plantations to entirely disappear. In states having similar stock interests and customs and regulations to those indicated, it has been held that the common law indicated above as to cattle has been superseded either as not suited to the institutions of the people or as repugnant to the legislation.''

It was held in that case that the common law rule requiring owners of animals to keep them off the unenclosed premises of others is not in force in Florida and that animals running at large are not necessarily trespassers when they go upon the tracks of railroad companies. When that case was decided there was no statute in this State such as is now in force requiring railroad companies to fence their tracks and imposing penalties upon them for failing to do so. In the jurisdictions where this doctrine obtains railroad companies are held to owe to the owners of such animals the duty not to negligently injure them and may be liable for injuries negligently inflicted upon such animals going upon their tracks although such injuries may not be wanton or wilful. The action, however, must be grounded upon the negligence of defendant and the burden of proof of such negligence is upon the plaintiff. Little Rock etc. Co. v. Finley, 37 Ark. 562, 11 Am. & Eng. R. Cas. 469; Williams v. Northern etc. R. Co., 3 Dak. 168, 14 N. W. Rep. 97, 11 Am. & Eng. R. Cas. 421; Smith v. Chicago etc. R. Co., 34 Ia. 506; New Orleans etc. R. Co. v. Field, 46 Miss. 573; Gorman v. Pacific etc. R. Co., 26 Mo. 441, 72 Am. Dec.220; Central Ohio R. Co. v. Lawrence,

13 Ohio St. 66; Kerwhacker v. Cleveland etc. R. Co., 3 Ohio St. 172, 62 Am. Dec. 246.

Eliminating from the declaration as surplusage all reference to defendant's duty under the statute to fence its track because inapplicable to the case stated, it may be held, under the doctrine just announced, to state a cause of action against the defendant which the plea of not guilty puts in issue. The Chief Justice and the writer are of the opinion that the declaration does state a cause of action which, if proved, would warrant a recovery by plaintiff, and that there is therefore no error in the order overruling the demurrer to the declaration. This view, however, is not concurred in by Mr. Justice Taylor and Mr. Justice Ellis, who consider the declaration insufficient and the order overruling the demurrer error. Aside from this question, however, it is apparent from what has been said that the case was presented and tried on a wholly erroneous theory. Charges were given to the jury which are made the basis of assignments of error upon the theory that the statute requiring railroad companies to erect and maintain fences on each side of their tracks sufficient to prevent the intrusion of animals thereon was applicable and that failure to comply with this statute was *prima facie* evidence of negligence on the part of the defendant. This was error. In the case stated there is no presumption against the railway company. Neither is the injury alleged to have been sustained *prima facie* proof of negligence of defendant. The burden of proving the negligence alleged is upon plaintiff.

Because of this error the judgment must be reversed.

Reversed.

BROWNE, C. J., AND TAYLOR AND ELLIS, J. J.. concur.

WHITFIELD, J., disqualified.