287 So.2d 18 (1973)
George William SELBY and Vera M. Selby, Appellants,
v.
Frank BULLOCK, Jr. et al., Appellees.
No. 43155.
Supreme Court of Florida.
October 31, 1973.
Rehearing Denied January 15, 1974.
*19 Robert O. Stripling, Jr., Gainesville, for appellants.
Stephen A. Rappenecker, Gainesville, for appellees.
BOYD, Justice.
This cause is before us on appeal from the Circuit Court, Levy County. The trial court, in its pre-trial order, entered after a pre-trial hearing and upon appellants' "Motion As To Constitutionality of Florida Statute 588.15", passed upon the validity of Section 588.15, Florida Statutes, 1971, giving this Court jurisdiction of the direct appeal under Section 3(b)(1) of Article V of the Florida Constitution, F.S.A.
The facts of the case are as follows:
Appellants seek review of a final judgment entered against them on September 26, 1972, in the Circuit Court, Levy County, upon a jury verdict of September 15, 1972. On September 5, 1972, prior to trial in this cause, appellants filed a "Motion As To Constitutionality of Florida Statute 588.15". Said Motion read, in part, as follows:
"1 ... Florida Statute 588.15 provides as follows:
"... . Every owner of livestock who intentionally, willfully, carelessly or negligently suffers or permits such livestock to run at large or stray upon the public roads of this state shall be liable for damages for all injury and property damages sustained by any person by reason thereof. (Emphasis added).
"2 ... [This] Statute purports to require that Plaintiffs, herein, prove by the greater weight of the evidence that defendants were careless or negligent in allowing their cattle to run at large upon or stray upon the highway upon which the accident occurred, which is the subject matter of this suit.
"3 ... Florida Statute 767.01 provides as follows:
"... . Owners of dogs shall be liable for any damage done by their dogs to sheep or other domestic animals or to livestock, or to persons."
"The above quoted statute imposes strict liability upon the owner of a dog when such dog causes personal injuries. This liability is like unto that of an insurer; and i.e., contributory negligence of the plaintiff is not a defense... .
"4 ... To require plaintiffs, herein, to establish carelessness or negligence on the part of Defendants in permitting their cattle to stray upon the public roads constitutes a denial of the equal protection of the laws. U.S.Const. amend. XIV; Fla. Const., Article I, § 2. No distinction exists between persons injured by virtue of the presence of dogs upon the public roads, and persons being injured by virtue of the presence of cattle upon the public roads."
In his pre-trial Order of September 11, 1972, the trial judge held as to appellants' motion:
"The Plaintiff's Motion as to the constitutionality of Section 588.15, Florida Statutes, be and the same is hereby denied. The Court specifically finds the Statute constitutional."
The facts behind the above proceedings were succinctly stated in appellee's brief:
"This is a classic case of a motorist who, while operating his motor vehicle on a *20 public road, strikes cattle owned by another and sustains damage. The accident occurred at night and resulted in injury and damage to Plaintiffs. At trial, Plaintiffs produced enough testimony on the issue of negligence to make a prima facie case and the case went to the jury. Also at trial, evidence was presented as to the contributory negligence of Plaintiff George Selby."
Thus, the first question for this Court's consideration is whether, in view of the fact that a statute exists establishing strict liability for the owners of dogs for any injuries caused by those dogs, the existence of another statute regarding injury caused by livestock, and failing to impose strict liability upon livestock owners for damages caused by said livestock, denies equal protection to one who is injured by livestock and who must prove that said livestock was intentionally, willfully, carelessly or negligently permitted to run at large.
Before considering, at length, appellants' first, and major, contention, we pause for a brief review of appellants' second and third contentions, both of which we view as being without merit.
Appellants' second point on appeal is that the trial court erred in striking their prayer for attorney's fees from the complaint. What is presented here is a situation where attorney's fees were sought in a direct action against tort feasors and their insurance carrier, there being no issue as to liability coverage or the like.
Appellees, in their brief, suggest that this question has been answered in the case of Wilder v. Wright.[1] It is clear that appellees are correct in this matter, and that our recent Wilder case controls and prevents the award of any attorney's fees in such a situation.
Appellants' third point on appeal is that the court erred in failing to charge the jury in accordance with their requested instruction Number 2. That instruction reads as follows:
"You are instructed that if you return a verdict against defendants Frank Bullock, Jr. and Jimmy Huber, or either of them, you should likewise return a verdict against defendant Cotton States Mutual Insurance Company."
Appellants maintain it was error for the trial court to refuse this jury instruction in light of the fact that the insurance company was a party defendant, and that there had been no severance for the purpose of trial. Appellants contend that the spirit of Beta Eta[2] requires that the jury be informed that a verdict is automatically returnable against the carrier in the event liability is found on the part of the insured.
In reply, appellees refused to discuss the issue, other than to point out that the verdict form included all named defendants, that a verdict for plaintiff would have been against all. Thus, appellees maintain that failure to give the instruction was harmless error at best. We agree.
Now, let us turn to appellants' major contention. The crux of this appeal is the constitutionality of Section 588.15, Florida Statutes F.S.A.
At the outset, we note that Sections 588.12 through 588.26 are known as the "Warren Act".[3] These sections deal primarily with three matters: (1) prohibiting livestock from running at large upon the public highways; (2) making the owner liable for damages; and (3) fixing a penalty.[4]
Appellants complain only of the requirement that negligence be proved. They admit *21 the Legislature can  and does  regulate livestock as a valid exercise of the police power. They have no quarrel with the fencing requirements or other regulations upon livestock owners. They also concede the public policy of promoting the livestock industry should be continued in Florida. In addition to all other regulations, appellants now want the livestock industry strictly liable, irrespective of other extensive regulation.
Chapter 588 requires, inter alia, the fencing of livestock. It defines a legal fence. It requires that livestock be fenced off the public highways. In exchange for these requirements, it holds the owner responsible if he intentionally or negligently allows his livestock to stray upon a public road. This appears a fair exchange.
It is arguable that the requirement of fencing has done more for the protection of the motoring public than the requirement of proof of negligence has done for the protection of livestock owners.
The Warren Act has delegated responsibilities and rights among livestock owners and motorists consistent within the goals of promoting the safety of highway users and the livestock industry. Any modification of this position should be done by the Legislature. To require fencing by the livestock owner and, in addition thereto, hold him strictly liable would place an impossible burden on the livestock industry. Those in the livestock industry would become virtual insurers, and this would retard and diminish stock raising as an important part of Florida agri-business. A key question is whether a fencing requirement or strict liability will have the greatest effect on protecting the motoring public by keeping the cows off the highway. The answer appears clear. Cows know little of strict liability but do respect barbed wire.
Since appellants do not question the authority of the Legislature to regulate the livestock industry, this Court must assume the legislation valid and constitutional.[5] The question is now  public policy aside  whether the requirement of proof of negligence under Section 588.15 operates as a denial of equal protection to appellants.
Appellants' allegation of denial of equal protection rests upon their theory they are all members of a class of persons who are required to prove negligence in order to recover for injuries sustained by animals. It seems clear, however, that membership in that class is not a denial of equal protection.
The equal protection clause doesnot deprive the state of the power to classify in the adoption of police regulations.[6] Thus, a statute passed in the exercise of the police power need not apply equally and uniformly to all persons of the state; it is enough to satisfy constitutional requirements relating to equal protection if the statute applies equally and uniformly to all persons similarly situated.[7] As held by this Court in Daniels v. O'Connor,[8] the equal protection clause is violated only when the classification made by an act is arbitrary and unreasonable. In Daniels, we stated:
"When the differences in treatment between those included and those excluded from the class bear a real and substantial relation to the purposes sought to be attained by the act, the classification is valid as against an attack under the equal protection clause."[9]
The reasonableness of the classification is underscored by the fact there appears to be a reasonable relationship between a motorist who is traveling along a highway at 65 m.p.h. and the Legislature's stated *22 purpose of keeping livestock from wandering in the path of that motorist. To keep livestock off the highway requires fencing. To require fenching, there must be incentive to the livestock owner. The incentive is civil responsibility only for damage caused by his negligence or his intent.
Obviously, the classification is valid  not only because it demands reasonable conformity in dealing with parties under similar circumstances, but also because it bears a reasonable and just relation to the object of the legislation.
Appellants are not denied equal protection simply because they must show negligence. All users of the public highway who are damaged by livestock on the road must prove negligence. All members of this class are treated equally. The equal protection clause demands only that the rights of all persons in a class must rest upon the same rule under similar circumstances. Under the Warren Act, all persons who use the highways must prove intent or negligence to recover damages suffered by virtue of livestock being on the public roads.
Cases are legion in which one class of persons urges denial of equal protection when they are required to do something another class is not. However, if all in the complaining class are treated alike, and the requirement they must meet bears reasonable relation to the object of the legislation, an attack on the legislation based upon denial of equal protection will generally fail. That livestock owners are not strictly liable, along with dog owners and owners of wild animals, is not an arbitrary difference in classification. The Legislature imposes no control burdens upon dogs. No statewide leash law exists. Dogs are free to roam. Dogs are not of paramount importance to the agri-business of the state, while the stock raising industry certainly is. With no controls, it seems fair to hold the owner strictly liable for damage done by a dog.
Equal protection of the laws has not been denied appellants. Not only are all of the constitutional tests met, but the Florida rule, as set forth in the Warren Act, is in accord with the great weight of authority. The Warren Act is progressive and beneficial legislation. The burden of proof of negligence is far outweighed by the great benefit provided by the Warren Act to those who use the highway. Presumably, the Legislature had all the alternatives before it when it enacted Section 588.15. It chose to require proof of negligence. It is not this Court's function to re-legislate that Act.[10]
Accordingly, the judgment of the trial court is affirmed.
It is so ordered.
CARLTON, C.J., and ROBERTS, ADKINS, McCAIN and DEKLE, JJ., concur.
ERVIN, J., dissents with Opinion.
ERVIN, Justice (dissenting):
It is obvious that F.S. Section 588.15, F.S.A. abrogated the common law rule in Florida permitting livestock to run at large on the public highways. I am inclined to believe that it also had the effect of statutorily providing that which was the ancient common law: that in the absence of wantonness or wilfulness on the part of those trespassed upon
"[o]wners of animals were bound at their peril to keep them upon their own premises, and if they did not do so, and the animals went upon the premises of others, the owners could be held liable for the trespass."
See 2 Fla.Jur., Animals § 25, page 283; Livestock on the highways, 3 Fla.Rev. 223.
The statute uses the word "negligently" in the disjunctive, along with other words, in prescribing the duty of owners of livestock *23 not to permit livestock to stray or run at large upon the public roads. This word to be given a realistic meaning obviously means the trespass negligence which the common law contemplated.
The public own the public highways for the purpose of travel. Owners of livestock do not have use of the public roads for the running at large and trespass thereon of their livestock. When cattle stray or run at large on the public highways from whatever cause or reason, their owners are constructively trespassing thereon. It is the statutory duty of their owners at their peril to keep their livestock off the public roads. This is the true teaching of the Warren Act. F.S. Ch. 588, F.S.A.)
The Warren Act (F.S. Section 588.15, F.S.A.) considered in the light of its history and purpose, should not be "watered" down to the usual type of simple negligence whereby an owner of cattle can require an injured motorist, the victim of a cow's trespass, to prove the owner negligently allowed his cow to stray on a public road before the victim can recover. As in this case, such an evidentiary burden on the victim usually defeats recovery. The Warren Act was intended to prohibit per se cattle from trespassing on the public roads. Compare deJesus v. Seaboard Coast Line Railroad Co., 281 So.2d 198 (Fla.), opinion filed June 6, 1973.
In the light of modern highway motor traffic conditions and the need of public safety for motorists, livestock owners should be held to have foreseen that injury will result from the trespass per se of strayed cattle on the public highways. Negligence should be imputed under such circumstances.
I think the rule of strict or absolute liability (see 57 Am.Jur.2d Negligence §§ 235 to 240, inclusive) is indicated by the Warren Act. Even if we are not ready to go that far I think we should at least settle for the rule (res ipsa loquitur) expressed by Paul B. Johnson anent the Warren Act in his law review notes cited above. He states that:
"A slight majority of the courts confronted with this issue regard the presence of livestock at large on the highway as prima facie evidence of negligence; the owner is accordingly required to go forward and rebut this presumption. The California Supreme Court, in expressly applying to this type of situation the doctrine of res ipsa loquitur, charterized its basis as the fact that the defendant either knows or has the best opportunity of ascertaining the cause of the accident. Other jurisdictions have reached the same result without relying on res ipsa loquitur expressly."
"... No undue stretch of the imagination is required to apply this doctrine to automobile accidents caused by the straying of livestock on the highways; under this statute such accidents will seldom be possible without negligence on the part of the livestock owner in keeping his animals. In most instances the other two prerequisites of res ipsa loquitur can also be met; absence of contributory negligence on the part of the motorist, and exclusive management and control of the livestock by their owner if he makes any serious effort to obey the law....
* * * * * *
"Even if the technical prerequisites of res ipsa loquitur are not satisfied in an accident of this type, negligence on the part of the owner might still be inferred as a matter of law. In view of the specific statutory imposition of a duty on the owner, the mere fact that livestock are straying on the public roads logically calls for an explanation from him as to his apparent violation of this duty."
See generally 58 Am.Jur.2d Negligence § 474 to 479, inclusive.
I think the argument of the majority that the rule of simple negligence they *24 here hold applicable fosters the best interests of the cattle industry is singularly illogical and irrelevant. The cattle industry does not need such a rule for its furtherance and encouragement. It has long been seen that the criminal sanctions of the Warren Act requiring fencing of livestock has promoted the best interests of cattle industry bringing better breeds of cattle and their more adequate maintenance. The sanction of strict civil liability would serve to bolster the enforcement of the Act which would help the cattle industry and also further promote public safety on the state highways.
The judgment below should be quashed with further proceedings in line with the modern and realistic rule of negligence espoused herein.
NOTES
[1] 269 So.2d 434 (Fla.App.2d 1972), aff'd 278 So.2d 1 (Fla. 1973.)
[2] Beta Eta House Corp., Inc. of Tallahassee v. Gregory, 237 So.2d 163 (Fla. 1970).
[3] See Lynch v. Durrance, 77 So.2d 458 (Fla. 1955).
[4] Id.
[5] See 6 Fla.Jur.Constitutional Law §§ 75-87.
[6] Id. at § 300.
[7] State ex rel. Walters v. Blackburn, 104 So.2d 19 (Fla. 1958).
[8] 243 So.2d 144 (Fla. 1971).
[9] Id. at 146.
[10] See 6 Fla.Jur.Constitutional Law §§ 54-59.