650 So.2d 46 (1994)
Paula Michelle FISEL, Appellant,
v.
William C. WYNNS and Frank R. Wynns, Appellees.
No. 93-2207.
District Court of Appeal of Florida, Fifth District.
October 14, 1994.
Opinion Certifying Question February 17, 1995.
*47 Harry T. Hackney, Cummins, Mueller & Judson, P.A., Leesburg, for appellant.
Frank A. Miller, Stuart & Strickland, P.A., Brooksville, for appellees.
EN BANC
HARRIS, Chief Judge.
We have chosen to hear this case en banc.
Paula Fisel, driving on a county road at night, was injured when she unexpectedly ran into a cow standing in the road. It is undisputed that the cow was owned (it was killed as a result of the accident) by William and Frank Wynns and had escaped their pasture through an open gate. When Fisel failed to rebut the testimony (by deposition) of Frank Wynns that he lived alone on the forty acres on which the cattle were kept; that he had no employees; that although he had three gates to the forty acres, the one involved in this action was at the rear of his property and some 1,400 feet from the county road involved herein; that his property was fenced and had an appropriate gate; that he closed the gate the day before the accident and did not use the gate again; and that he had no visitors and that he is unaware how his gate came to be open, summary judgment was entered in favor of the Wynns. Fisel appeals; we affirm.
Before the enactment of fencing requirements, Florida was an open-range state. During this period, not only would a motorist involved in an accident with roaming livestock not be entitled to recovery, he or she would be responsible for the rancher's loss because of the death of the livestock. Then the legislature enacted chapter 588 which, after establishing the legal requirements for a fence and gate, provides:
588.14 Duty of Owner.  No owner shall permit livestock to run at large on or stray upon the public roads of this state.
588.15 Liability of Owner.  Every owner of livestock who intentionally, willfully, carelessly or negligently suffers or permits such livestock to run at large upon or stray upon the public roads of this state shall be liable in damages for all injury and property damage sustained by any person by reason thereof.[1]
It is suggested that the mere presence of the cow on the roadway is sufficient evidence of violation of the above statutes to establish negligence per se. Alternatively, it is contended that the summary judgment is *48 inappropriate because the Wynns did not establish that they took all reasonable precautions to prevent the release of the cattle by a trespasser (even though there is no indication that there had ever been a trespasser in the area).
Our reading of the decisions of our supreme court and the other district courts of this state convince us that neither position is viable.
To "permit" the livestock to run at large requires that the owner either willfully lets the cattle roam, acquiesces in conditions which permit the cattle to roam, or fails to take action which the owner knows or should know is necessary to prevent the cattle from roaming. That is why the statute requires that negligence (or an intentional act) must be proved in order to establish liability. In Selby v. Bullock, 287 So.2d 18, 21 (Fla. 1973), the supreme court held:
The Warren Act [the statutes involved in this action] has delegated responsibilities and rights among livestock owners and motorists consistent with the goals of promoting the safety of highway users and the livestock industry. Any modification of this position should be done by the Legislature. To require fencing by the livestock owner and, in addition thereto, hold him strictly liable would place an impossible burden on the livestock industry. Those in the livestock industry would become virtual insurers, and this would retard and diminish stock raising as an important part of Florida agri-business.
The legislature has not altered the act nor has the supreme court changed the public policy since Selby. And while the presence of a cow in the road indicates the probable negligent or willful act of someone, such act may not be attributed to the rancher without evidence.
It is not disputed that the Wynns had a fence that met the statutory definitions [section 588.011(1) and (2)] and had a gate which complied with section 588.011(3)(a). The legislature did not require that the gate be locked. The legislature also provided that a cattle guard would be an acceptable alternative to a gate, as opposed to an additional requirement.
The plaintiff presented nothing at the hearing on the motion for summary judgment to create an issue as to whether the Wynns "intentionally, willfully, carelessly, or negligently" left the gate open. Further, there was no issue raised as to whether a visitor (at least invited) left the gate open. The plaintiff urges on appeal, however, without appropriate pleadings and with no evidence, that it is possible that another person, uninvited, came later and opened, and left open, the gate. In such case, under the present statute and under the allegation of the complaint, would the Wynns be liable?
In this case, the only allegation to justify liability is that the Wynns "intentionally, willfully, carelessly, or negligently suffered or permitted their livestock to run at large upon or stray upon the public roads ..." Based on the record before the court at the time of the hearing on the motion for summary judgment, the only possible way to avoid entry of a judgment in favor of the Wynns would be, even without appropriate pleadings and without any support in the record, to assume that an uninvited person was responsible for the release of the cow (because it is unlikely that there could have been an escape from the fenced enclosure without the intervention of a person to open the gate), and that the Wynns were liable for the conduct of this other person.
This issue was present, but not addressed, in Gordon v. Sutherland, 131 So.2d 520 (Fla. 3d DCA), cert. denied, 135 So.2d 742 (Fla. 1961). The facts were very similar. Cows in the highway adjacent to Sutherland's property caused an accident. Sutherland, admitting ownership, testified that he checked the gates and found them secure shortly before the accident. He found after the accident that, while the gate was still closed, someone had tampered with the rope holding the gate closed. Other evidence also indicated the presence of an intruder. The court refused to find liability, stating:
In view of [Lynch v. Durrance, 77 So.2d 458 (Fla. 1955)] there is no merit in appellant's contention that the fact that an animal was running at large on the highway justified an inference that defendants had *49 violated the statute. The evidence before the trial judge was completely devoid of proof that the defendants negligently suffered or permitted the cows to be on the highway; therefore, there was no evidence of negligence and no prima facie case. Any other holding would disregard the plain language of the statute.
Id. at 522.
Gordon does not discuss any potential liability on the part of Sutherland because of the actions of the trespasser  perhaps because it was not pled; perhaps because there was nothing in the record to indicate that Sutherland could reasonably have foreseen that a trespass would result in his cattle being released onto the highway. But Sutherland had four gates, each of which opened directly onto a public highway. Wynns' gate opened 1400 feet down a limerock road from the nearest county road.
In Lee v. Hinson, 160 So.2d 166 (Fla. 2d DCA), cert. denied, 166 So.2d 594 (Fla. 1964), the court considered another case almost identical to ours. There, two horses escaped from an enclosure through an open gate and caused an accident. On summary judgment, the owner denied that he, or anyone working for him, had left the gate open. Plaintiff presented nothing in opposition. The court upheld the summary judgment stating:
In our view, this record discloses a classic example of the intent and purpose to be accomplished by the rule authorizing summary judgment. The defendant in this case met the burden imposed upon movants for summary judgment by clearly and unequivocally establishing, by depositions and affidavits supporting his motion, that even after drawing all reasonable inferences in favor of the plaintiff, there are no material facts by virtue of which the plaintiff's position might be sustained upon trial .. . The record here establishes, without genuine issue as to any material fact, that neither the defendant nor his servants or agents, for whose acts the defendant would be responsible, was negligent. The mere fact that the defendant's horses were running at large upon the public highway [and the fact that the defendant's gate was wide open] does not justify an inference that the defendant intentionally, willfully, carelessly or negligently permitted them to so run at large ...
Id. at 167. Again, the court did not discuss the defendant's liability for the acts of trespassers  perhaps because it was not raised in the pleadings.
In Davis v. Johnson, 288 So.2d 554 (Fla. 2d DCA 1974), the court explicitly considered the owner's liability for the acts of a trespasser in this type of case for the first time. In distinguishing Gordon and Lee, the court stated:
However, the depositions reveal that neighborhood children and older persons often went in and out of the pasture, perhaps at will, and frequently left the gate open after passing through. The defendant's cattle had escaped through the open gate on a number of previous occasions. A land owner can be held liable for injuries inflicted by trespassers upon persons outside his premises if he had reason to anticipate that the trespasser would engage in the conduct which caused the injury and thereafter had a reasonable opportunity to prevent or control such conduct.
Id. at 555 (citations omitted).
Unlike Davis, the depositions in the instant case reveal no previous escapes and no previous trespassers through this gate some 1400 feet from the nearest county road. Although there are few cases dealing with liability for the conduct of trespassers and others acting without the possessor's knowledge or consent, it is clear that there is no liability until the possessor knows or should know of the likelihood of trespassers and has had a reasonable opportunity to exercise the proper care to prevent injury to others.[2] To prevent a summary judgment only on the basis that there might have been a trespasser, the record should reflect (as did the record in Davis) that previous trespasses or previous cattle escapes had occurred and that appropriate action had not been taken.[3]
*50 Referring back to the public policy announced by the supreme court and cited earlier in this opinion, to hold owners who comply with the statute by providing legal fences and legal gates and who are not themselves or through their authorized agents, intentionally, willfully, carelessly, or negligently responsible for permitting the cattle to run at large, liable for the unforeseen acts of unanticipated trespassers is indeed making such owners "virtual insurers."
Because the case law in this area is neither recent nor totally consistent, a review by the supreme court both as to the law and the public policy would be beneficial to the bench and bar.
AFFIRMED.
COBB, W. SHARP, GOSHORN, PETERSON, DIAMANTIS and THOMPSON, JJ., concur.
DAUKSCH, J., dissents with opinion.
GRIFFIN, J., dissents with opinion in which DAUKSCH, J., concurs.
DAUKSCH, Judge, dissenting.
I respectfully dissent.
Summary judgment is not appropriate unless the facts of the case are so crystallized that only questions of law remain for the trial court to determine. 4444 Corp. v. City of Orlando, Fla., 598 So.2d 287 (Fla. 5th DCA 1992). I find that genuine issues of material fact exist, which should have precluded the granting of a motion for summary judgment.
Section 588.15, Florida Statutes, provides that an owner who negligently permits their livestock to run at large upon or stray upon the public roads of this state shall be liable for all injury and property damage that resulted by reason thereof. I find that the negligence required in section 588.15 may be established by finding that the Wynnses violated section 588.14, and that violation establishes negligence per se.
Negligence per se arises when a statute, which establishes a duty to take precautions to protect a particular class of persons from a particular injury, is violated. Torres v. Offshore Professional Tour, Inc., 629 So.2d 192, 193 (Fla. 3d DCA 1994); Palmer v. Shearson Lehman Hutton, Inc., 622 So.2d 1085, 1090 (Fla. 1st DCA 1993); deJesus v. Seaboard Coast Line R.R. Co., 281 So.2d 198, 201 (Fla. 1973). The legislative purpose of Chapter 588 was to keep livestock from wandering in the path of motorists. Selby v. Bullock, 287 So.2d 18, 21-22 (Fla. 1973). Section 588.14 establishes a duty on the owner of livestock to take precautions to prevent livestock from wandering in the path of motorists, which should prevent accidents arising from the collision of motor vehicles and livestock. Therefore, a violation of this statute would give rise to a finding of negligence per se.
In order to prove that section 588.14 has been violated, a finding that the owner permitted their livestock to run at large is required. "Permit" is defined as "To suffer, allow, consent, let; to give leave or license; to acquiesce, by failure to prevent, or to expressly assent or agree to the doing of an act." Black's Law Dictionary, 1026 (5th ed. 1979). In order to find that the Wynnses permitted their livestock to run at large, there must be evidence that they either allowed, let, or acquiesced by failing to prevent, their livestock from running at large. The fact that the Wynnses did not lock all of the gates from which the cows could be *51 released, and one of their cows was found on a public highway is evidence that they failed to prevent their livestock from running at large. The failure to prevent livestock from running at large amounts to a violation of section 588.14. Because section 588.14 established a duty to take precautions to protect a particular class of persons from a particular type of injury, a violation of section 588.14 amounts to negligence per se. However, a finding of negligence per se does not necessarily mean there is actionable negligence. In order to find that there is actionable negligence, it must be established that the plaintiff is of the class that the statute was intended to protect, the plaintiff suffered injury of the type the statute was designed to prevent, and the violation of the statute was the proximate cause of plaintiff's injury. Palmer, 622 So.2d at 1091; deJesus, 281 So.2d at 201. Because the legislative purpose of Chapter 588 was to keep livestock from wandering in the path of motorists, Fisel is within the class of persons and has suffered the type of injury that Chapter 588 was designed to protect. Whether the violation of the statute was the proximate cause of Fisel's injury, should have been considered by the jury. City of Pinellas Park v. Brown, 604 So.2d 1222, 1228 (Fla. 1992) (where reasonable people may differ, proximate cause remains an issue for the jury to resolve); Pamperin v. Interlake Companies, Inc., 634 So.2d 1137, 1139 (Fla. 1st DCA 1994) (same); Trouette v. Reynolds, 593 So.2d 1203, 1204 (Fla. 5th DCA 1992).
The fact that the Wynnses did not take precautions to ensure that all of their gates could not be opened by unauthorized individuals and one of their cows was found running at large on a public highway, is sufficient evidence to support a finding that the Wynnses violated section 588.14, and are negligent per se. This evidence creates a genuine issue of material fact, as to whether the negligence is actionable, which should be submitted to the jury for determination. Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985); Wallace v. Pensacola Rent-A-Wreck, Inc., 616 So.2d 1048, 1050 (Fla. 5th DCA), rev. dismissed, 623 So.2d 494 (Fla. 1993). Therefore, I would reverse the trial court's order granting summary judgment.
GRIFFIN, Judge, dissenting.
The record shows that there were three gated openings to the Wynns' property, where they keep forty head of cattle. Two were kept locked; the third was not. After this accident, Mr. Wynn found the gate open. He also found that two of his cattle had escaped his property, one of which caused the very serious accident and injuries to appellant. After the accident, he secured this gate, as he had the others, with a $12 padlock.
The Wynns urge that because the fenced enclosure from which their cow escaped can only be operated by human hands and because the plaintiff has no evidence that the Wynns did not close the gate when they last used it on the day before the accident, the Wynns are entitled to a summary judgment on the issue of whether they negligently suffered or permitted their cow to stray upon a public road where it caused serious injury. The nature and extent of the Wynns' duty of care to prevent their livestock from getting onto the highway, and whether that duty was met, requires consideration of all relevant circumstances, however. As the majority acknowledges, liability may be based on the Wynns' failure to take action which they knew or should have known was necessary to prevent the cattle from roaming. Even if the gate had been opened by an unauthorized person, there could be liability if there were reason to anticipate this might occur and if reasonable measures were available to prevent or control such conduct. See Davis v. Johnson, 288 So.2d 554, 555 (Fla. 2d DCA 1974). These issues require consideration of several factors, including proximity to the highway, the frequency with which the cows have gotten out of their enclosure, the frequency and nature of human traffic in the area, the severity of the potential harm and the cost/benefit of a different type of closure or use of a lock.
The present record does not establish that the Wynns are entitled to judgment on these issues as a matter of law. Absence of liability cannot depend solely on lack of evidence that these cattle had previously escaped due *52 to the opening of this gate by a trespasser. A "one roam" rule is not the appropriate test for liability. A jury may or may not conclude that, given the totality of the circumstances, it was not reasonable to fail to lock the gate.[1]
I would reverse the summary judgment.
DAUKSCH, J., concurs.

ON MOTION TO CERTIFY QUESTION
HARRIS, Chief Judge.
We grant Appellant's Motion to Certify Question and amend our opinion to certify the following question as one of great public importance:
HAVE CHANGING CONDITIONS IN FLORIDA ALTERED PUBLIC POLICY AS ANNOUNCED IN SHELBY V. BULLOCK, 287 So.2d 18 (Fla. 1973), SO THAT A LIVESTOCK OWNER MAY NOW BE LIABLE FOR INJURIES RESULTING WHEN THE OWNER'S LIVESTOCK WANDERS THROUGH AN OPEN GATE, AND THE REASON THE GATE IS OPEN IS UNKNOWN?
DAUKSCH, W. SHARP, GOSHORN, PETERSON, DIAMANTIS and THOMPSON, JJ., concur.
GRIFFIN, J., concurs specially with opinion.
COBB, J., dissents with opinion.
GRIFFIN, Judge, concurring.
I concur in certifying the question but inasmuch as I do not believe that the position I espoused in my dissent represents a departure from Shelby v. Bullock, I urge the question to be phrased as follows:
IF ONE INJURED BY ROAMING LIVESTOCK CANNOT PROVE THE LIVESTOCK WERE PERMITTED TO ROAM BY THE ACT OF THE OWNER IN OPENING, OR IN FAILING TO CLOSE A GATE TO THE FENCED ENCLOSURE, DOES THE LAW OF FLORIDA NEVERTHELESS PERMIT A NEGLIGENCE CAUSE OF ACTION PROVIDED THE INJURED PERSON CAN ESTABLISH THAT, UNDER THE TOTALITY OF THE CIRCUMSTANCES, THE OWNER FAILED TO TAKE REASONABLE MEASURES TO PREVENT THE ESCAPE OR RELEASE OF HIS LIVESTOCK? IF SO, WAS SUMMARY JUDGMENT APPROPRIATE IN THIS CASE?
COBB, Judge, dissenting.
There is nothing in the record before us in this case to suggest a "change in conditions in Florida" since 1973 in regard to the liability of livestock owners, and nothing that suggests to me that this is a question of great public importance to be resolved by the Florida Supreme Court. If the majority members of this court are interested in revising section 588.15, Florida Statutes, then they should contact their legislative representatives rather than send a bogus issue to the Florida Supreme Court.
NOTES
[1] It is apparent that the legislature, perhaps in a compromise with the cattle industry, (an industry important to the state), did not intend the strict liability that it imposed on dog owners. Consider the difference in the statutes involved herein and section 767.04:

The owner of any dog that bites any person while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of the dog, is liable for damages suffered by persons bitten, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness... .
As the supreme court stated in reference to this statute:
Consistent with our ruling in [Carroll v.] Moxley [241 So.2d 681 (Fla. 1970)], we can only conclude that in making the dog owner the insurer against damages done by his dog, ... the legislature intended to shoulder him with the burden of his animal's acts ... (emphasis added).
Donner v. Arkwright  Boston Manufacturing Mutual Insurance Co., 358 So.2d 21, 24 (Fla. 1978).
If we make the rancher in our case liable for the unexpected acts of a trespasser that he has no reason to anticipate, we have made him  as is the owner of a dog  the insurer against damages done by his animals.
[2] William L. Prosser, Handbook of the Law of Torts § 57, at 356-57 (4th ed. 1971).
[3] While the movant for summary judgment has the burden to overcome all reasonable inferences which may be drawn in favor of plaintiff, the mere presence of the cattle on the road is insufficient to raise any inferences in plaintiff's favor. Gordon. Fisel suggests that Wynns should have rebutted the possibility that a trespasser might have committed the act. But, there is no pleading, no evidence and no inference that the gate was left open by a trespasser. In every case that we have found in which an owner or possessor has been subjected to liability because of the conduct of another not under his supervision or control [a trespasser, a thief, etc.], the complaint alleged the existence of such a person and sufficient facts justifying holding the owner or possessor liable. See, e.g., "keys in the ignition" cases: Vining v. Avis Rent-A-Car Systems, Inc., 354 So.2d 54 (Fla. 1977); Schwartz v. American Home Assurance Co., 360 So.2d 383 (Fla. 1978). See also the cases relied on by Fisel: Homan v. County of Dade, 248 So.2d 235 (Fla. 3d DCA 1971); State Farm Ins. Co. v. Nu Prime Roll A Way of Miami, 557 So.2d 107 (Fla. 3d DCA 1990). There is simply no reason in this case, under the current status of the law, to infer that the injuries were caused by the negligence of a trespasser which can be imputed to the Wynns.
[1] The fact that the gate met the very minimum requirements of a "legal fence" as set forth in section 588.011, Florida Statutes, is not dispositive of the issue of negligence. Compliance with a statute is not conclusive of due care, even where the statute is specific. Nicosia v. Otis Elevator Co., 548 So.2d 854 (Fla. 3d DCA 1989). This statute does not even address how the gates are to be fastened or secured.