667 So.2d 761 (1996)
Paula Michelle FISEL, Petitioner,
v.
William C. WYNNS and Frank R. Wynns, Respondents.
No. 85285.
Supreme Court of Florida.
February 8, 1996.
*762 Harry T. Hackney of Cummins, Mueller & Judson, P.A., Leesburg, for Petitioner.
Frank A. Miller of Stuart & Strickland, P.A., Brooksville, for Respondents.
George A. Vaka and Tracy Raffles Gunn of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Florida Farm Bureau Federation.
SHAW, Justice.
We have for review Fisel v. Wynns, 650 So.2d 46 (Fla. 5th DCA 1994), wherein the district court certified the following question:
Have changing conditions in Florida altered public policy as announced in Selby v. Bullock, 287 So.2d 18 (Fla.1973), so that a livestock owner may now be liable for injuries resulting when the owner's livestock wanders through an open gate, and the reason the gate is open is unknown?
Fisel, 650 So.2d at 52. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the negative and approve Fisel.
Fisel's truck struck a black cow standing in a dark road at midnight. Twenty-year-old Paula Fisel was returning to a party near Bushnell in Sumter County, Florida, early Sunday morning, March 15, 1992, when her pickup truck struck a cow that had strayed onto the county road through an open gate. When she got out of her truck, Fisel was struck by a vehicle approaching from the opposite direction and suffered a broken leg.
Fisel sued the cow's owner, Frank Wynns, and deposition testimony revealed the following: Wynns lived alone on forty acres on which he kept forty head of cattle; Wynns had no employees; Wynns' property was fenced and had several gates; the western gate, which is 1400 feet from the county road and secured by a sliding latch that can be operated only by human hands, was found open following the accident; Wynns had used the gate the day before and closed it; Wynns had no visitors during this period and did not know how the gate was opened. There was no showing that Wynns' cattle had escaped on prior occasions or that there had been trespassers in the past.
The trial court granted summary judgment in favor of Wynns and the district court sitting en banc affirmed on the basis of Selby v. Bullock, 287 So.2d 18 (Fla.1973), wherein this Court ruled that a showing of at least negligence is required to establish liability against a livestock owner under sections 588.14 and 588.15, Florida Statutes (1971). The district court certified the above question.
Fisel argues the following: Changing conditions have altered public policy since Selby; a violation of section 588.14 is negligence per se; and summary judgment was improper because disputed issues of material fact remain. To require plaintiffs to show negligence or more, Fisel asserts, results in a "shoo-in" rule whereby livestock owners escape all liability absent a showing that they practically shooed their animals into the road. We disagree.
The rule at common law was that livestock owners had to confine their animals or face liability:
At common law the owners of animals were bound at their peril to keep them upon their own premises. If they did not do so and the animals went upon the premises of others, the owners could be held liable for the trespass. Owners were not obliged to fence their lands against animals, but had a right to rely upon the owners of them performing their duty to keep the animals confined.
Seaboard Air Line Ry. v. Coxetter, 82 Fla. 414, 422, 90 So. 469, 472 (1921).
"Open range" laws enacted during the 1800s reversed this rule and placed the burden *763 on property owners to fence their lands to keep straying livestock out:
So early as the year 1823, at the second session of the Legislative Council of the Territory, a statute regulating fences was enacted to take effect from and after the first day of the then ensuing May. After prescribing by its first section the dimensions of the fence, it provided by section 2, that if any trespass or damage should be committed on any garden, orchard, plantation or settlement, not fenced or inclosed as prescribed, by the breaking in or straying of any cattle, horses, sheep, goats or swine, the owner thereof should not be liable to answer for or make good any damage or injury happening or committed by reason thereof; and further that in case any person should kill, maim or hurt any such stock so straying or breaking into any such place or settlement not so fenced or inclosed, should answer and make good to the owner of the stock all injury and damage sustained thereby....
....
Nothing is clearer than that the purpose and effect of all this legislation were not only to change the common law and require of every landholder or other person that he should fence out his neighbor's, and every one else's stock, if he desired protection against damage from them, but also to establish and protect a right in resident owners of stock for their cattle and other domestic animals to range and graze on all uninclosed lands free of charge, and without any liability for any damage resulting from their going upon or grazing on any lands whatsoever not inclosed by a lawful fence. No special interest is of much if any more moment to our State, and none elicited earlier legislative attention than stock raising.
Cattle, hogs and sheep, if not all other kinds of live stock, not known to be dangerous, have been allowed, and accustomed at all times and in all parts of our State, since at least soon after its acquisition from the Spanish crown, to run at large and graze on all lands not inclosed by a fence. This has prevailed not only throughout the rural districts but also in the towns.... A different policy than that which has prevailed would have proven ruinous to the important stock interests of different sections of the State....
Savannah, Fla. & W. Ry. v. Geiger, 21 Fla. 669, 682-85 (1886).
The "open range" ended in 1949 with passage of the Warren Act, a statewide scheme for keeping livestock off the roads. This act, which remains in effect today, requires livestock owners to control their animals:
588.14 Duty of owner.No owner shall permit livestock to run at large on or stray upon the public roads of this state.
§ 588.14, Fla.Stat. (1991). Rather than holding livestock owners strictly liable, the legislature opted instead for a showing of at least negligence:
588.15 Liability of owner.Every owner of livestock who intentionally, willfully, carelessly, or negligently suffers or permits such livestock to run at large upon or stray upon the public roads of this state shall be liable in damages for all injury and property damage sustained by any person by reason thereof.
§ 588.16, Fla.Stat. (1991).
This Court in Selby v. Bullock, 287 So.2d 18 (Fla.1973), addressed a scenario similar to the present case:
This is a classic case of a motorist who, while operating his motor vehicle on a public road, strikes cattle owned by another and sustains damage. The accident occurred at night and resulted in injury and damage to Plaintiffs.
Id. at 19-20 (quoting appellee's brief).
The jury in Selby returned a verdict in favor of the livestock owner and the plaintiff appealed to this Court, arguing that his equal protection rights had been violated because section 588.15 requires a finding of at least negligence whereas the "dog bite" statute imposes strict liability. The Court rejected out of hand the idea of holding livestock owners strictly liable:
To require fencing by the livestock owner and, in addition thereto, hold him strictly liable would place an impossible burden on the livestock industry. Those in the livestock industry would become virtual insurers, *764 and this would retard and diminish stock raising as an important part of Florida agri-business. A key question is whether a fencing requirement or strict liability will have the greatest effect on protecting the motoring public by keeping the cows off the highway. The answer appears clear. Cows know little of strict liability but do respect barbed wire.
Id. at 21.
We analyzed the trade-off between livestock owners and motorists and noted that any change in the law would have to come from the legislature:
Chapter 588 requires, inter alia, the fencing of livestock. It defines a legal fence. It requires that livestock be fenced off the public highways. In exchange for these requirements, it holds the owner responsible if he intentionally or negligently allows his livestock to stray upon a public road. This appears a fair exchange.
It is arguable that the requirement of fencing has done more for the protection of the motoring public than the requirement of proof of negligence has done for the protection of livestock owners.
The Warren Act has delegated responsibilities and rights among livestock owners and motorists consistent within the goals of promoting the safety of highway users and the livestock industry. Any modification of this position should be done by the Legislature.

Id. at 21 (emphasis added).
The legislature has left section 588.15 intact following Selby and we are just as bound today as we were in 1973 to give the statute a literal reading. Although it is possible that the balance of interests between livestock owners and motorists has shifted in the intervening years, this is a matter for the legislaturenot this Courtto address:
Presumably, the Legislature had all the alternatives before it when it enacted Section 588.15. It chose to require proof of negligence. It is not this Court's function to re-legislate that Act.
Id. at 22. Accordingly, we reaffirm Selby on this issuewe will not "re-legislate that Act."
In the present case, the trial court properly granted summary judgment. Florida Rule of Civil Procedure 1.510 provides:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
Fla.R.Civ.P. 1.510(c).
Courts should be parsimonious in granting summary judgments in negligence suits:
Summary judgments should be cautiously granted in negligence and malpractice suits. The law is well settled in Florida that a party moving for summary judgment must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought. A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law.
If the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it.
Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985) (citations omitted). But it is never enough "for the opposing party merely to assert that an issue does exist." Landers v. Milton, 370 So.2d 368, 370 (Fla.1979).
Here, the key evidence is uncontroverted. The gate was 1400 feet from the county road and was secured by a sliding latch that could be operated only by human hands; Wynns was the last to use the gate and he closed and secured it. There was no showing whatever of prior strayings or trespassers. No construction of these facts yields a reasonable inference of negligence.
Based on the foregoing we answer the certified question in the negative and approve Fisel.
It is so ordered.
*765 GRIMES, C.J., and OVERTON, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.